(307 P.3d 232)
No. 108,425

KEITH LUMRY, *Appellant*, v. STATE OF KANSAS, KANSAS BUREAU OF INVESTIGATION, CLINT HAWKINS, KELLY RALSTON, and ROBERT BLECHA, *Appellees*.

Opinion filed August 16, 2013.

*Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarobe, L.L.C., of Topeka, for appellant.

*Teresa L. Watson* and *David R. Cooper*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellees.

Before STANDRIDGE, P.J., ARNOLD-BURGER and POWELL, JJ.

ARNOLD-BURGER, J.: Keith Lumry, a former employee of the Kansas Bureau of Investigation (KBI), sued the KBI as well as three of his former supervisors in their individual capacities for violating his rights under the Fair Labor Standards Act (FLSA) and for retaliatory discharge in violation of the Kansas Minimum Wage and Maximum Hours Law (KMWMHL). Because the undisputed facts lead us to the conclusion that two of the supervisors named in this action do not meet the definition of "employer" under the FLSA, his claims against them necessarily fail. As to the remaining supervisor, who does fit the definition of employer under the FLSA, the undisputed facts fail to establish that Lumry made an unequivocal claim under the FLSA for which the supervisor may

have retaliated. Finally, Lumry's claim under the KMWMHL fails because the KMWMHL does not apply to any employer that is subject to the FLSA and the KBI is subject to the FLSA. Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants.

## FACTUAL AND PROCEDURAL HISTORY

Lumry began working as a Special Agent for the KBI in October 2001. He was stationed in southwest Kansas and worked on narcotics investigations from 2002 through 2008. During this time, Lumry's direct supervisor was Special Agent in Charge Kelly Ralston.

In January 2008, Lumry joined the newly formed Southwest Kansas Drug Task Force (Task Force). While working on the Task Force, Lumry's direct supervisor was Senior Special Agent Clint Hawkins. As manager of the Task Force, Hawkins reported to Ralston. Ralston reported to KBI Assistant Director Larry Thomas. Throughout Lumry's employment with the KBI, Robert Blecha was the Director of the KBI. As the Director, Blecha had the authority to place Lumry on administrative leave and to terminate his employment.

When Lumry began working for the KBI, he was provided training on and copies of the agency's policies and procedures. He received the KBI's policy on how to fill out timesheets, and he understood that the policy required that " 'timesheets will accurately reflect time worked, leave taken and earning codes charged.' " The policy further provided that " '[e]mployees are responsible for continually monitoring the accuracy of the information on the payroll "stub," including compensation, accrued leave balances, deductions, and leave accrual rates.' "

While working for the KBI, Lumry submitted his timesheets electronically to Ralston through e-mail. Lumry placed an electronic signature on the timesheets attesting to their accuracy.

Lumry understood that the KBI policy regarding overtime for agents was to either pay overtime compensation or to provide compensatory time off at a rate of one and one-half times the base hourly rate for each hour worked in excess of 80 hours in a 2-week

pay period. Lumry testified, however, that he routinely worked overtime without being compensated for it and that he understood it was expected of him. Hawkins testified that it was common for a Special Agent to work 80 hours in a week.

Lumry stated that he " 'negotiated' " his overtime with his former supervisor, Ralston, every 2 or 3 months and was often encouraged not to report his overtime. It is undisputed that shortly before joining the Task Force, Lumry told his new supervisor, Hawkins, that he would "work an extra 5 hours a week and give you that extra time; but I'm not going to work 10 and 20 hours a week anymore, or more, of unclaimed overtime."

One month into the Task Force's work, Hawkins first became aware of a concern regarding Lumry's timesheets when Lumry told Hawkins that he was already over on hours for the 2-week period. This raised a red flag in Hawkins' mind because he had a general idea of how many hours Lumry should have worked. Hawkins asked Ralston for Lumry's timesheet, which Ralston provided.

In order to evaluate the accuracy of Lumry's timesheets, Hawkins asked Special Agent Shane Finley and Special Agent Jason Diaz to log all of their work activities so he could compare their logs to Lumry's timesheets. Hawkins used the logs to verify entries on Lumry's timesheets for time claimed on cases involving Finley or Diaz.

During this investigation, Hawkins discovered that Lumry was claiming hours for operations involving other agents when the other agents were not present and not claiming time. Hawkins checked to make sure that Lumry had not accidentally written the wrong case number on his timesheet since two case targets were located near each other, but Hawkins determined that he had not.

On Hawkins' review of Lumry's timesheets, he noted that Lumry claimed time for operations where Hawkins was personally present but Lumry was not and that he claimed time for operations where both he and Hawkins were present, but that Lumry claimed a larger amount of time than the operation actually lasted. Hawkins noted that some of Lumry's timesheet entries were incorrect and were false based on Hawkins' personal knowledge from having been there at the time.

Hawkins discovered that Lumry's timesheet for February 11, 2008, claimed time on a "dead" case that agents were no longer working on, so Hawkins asked Lumry to log his activities for that week. Lumry's log did not mention time on the dead case that he claimed on his timesheet. Hawkins further noted that there were other discrepancies between Lumry's timesheet and his activity log.

On February 27, 2008, after concluding that Lumry's timesheets were falsified, Hawkins sent his supervisor, Ralston, an e-mail explaining his observations. Ralston was concerned that if Lumry had falsified his timesheets it would affect his credibility as a government witness. Prosecutors are required to disclose evidence about the credibility of government witnesses, including law enforcement officers, to defense counsel in criminal prosecutions, and such information may jeopardize those prosecutions. See *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). Because of the *Giglio* issue, and his concern about the possibility of false writings, Ralston determined Hawkins' report about Lumry needed to be moved up the chain of command to the Assistant Director Thomas.

On February 28, 2008, Director Blecha ordered an administrative inquiry regarding the allegations about Lumry's timesheets and assigned Special Agent in Charge Randy Ewy of the Wichita Region to conduct the inquiry.

Ewy interviewed Lumry and wrote a report that stated that Lumry told him that he did not falsify or " 'pad' " his timesheets and that Lumry also stated that he works more hours than he claims and that he often " 'shaves' " hours from his timesheets. Ewy further noted that it was difficult for him to assess the root causes of the concerns and noted that a polygraph might be a viable additional option if deemed appropriate. Ewy testified that he did not know if the timesheet issues were caused by deliberate falsification or mistake.

During the investigation, Lumry requested a polygraph to demonstrate that he did not forge any documents; however, Lumry was never given a polygraph. Director Blecha testified that he did not even consider giving Lumry a polygraph because he was satisfied with the investigation.

On May 22, 2008, Director Blecha sent Lumry a letter advising him that he had been placed on administrative leave. Director Blecha testified that he took the complaints against Lumry very seriously because if a law enforcement officer falsifies documents, the officer cannot proceed in the profession because he would have no credibility in future court proceedings.

Two weeks later, Director Blecha sent a letter to Lumry advising him of his proposed termination. The letter stated that the reason for the termination was because Lumry "knowingly and willfully" falsified his timesheets.

Shortly thereafter, Assistant Director Thomas e-mailed Director Blecha to inform him of his recent communications with Lumry. Thomas' e-mail stated that Lumry had told him that throughout his entire KBI career, with the knowledge of his supervisors, including Ralston and Hawkins, he had shaved hundreds, possibly thousands of hours off of his timesheets.

Lumry met with Director Blecha and the Kansas Organization of State Employees (KOSE) representative Don Dooley to appeal his termination. At the appeal, Dooley raised arguments about the number of days allowed to administer discipline but failed to mention the issue of falsified timesheets.

A few days later, Director Blecha sent Lumry a letter informing him that he was being terminated from his employment. In the letter, Director Blecha stated that it was undisputed that Lumry falsified his timesheets. Director Blecha specifically pointed out the fact that neither Lumry nor Dooley made any attempt to refute the fact that Lumry falsified his timesheets.

The letter further informed Lumry of his right to appeal the termination to the Kansas Civil Service Board within 30 days. Lumry timely initiated an appeal to the Civil Service Board, but he later dismissed it, therefore failing to challenge the ultimate conclusion that he falsified his timesheets by *overreporting* his hours.

Over a year later, Lumry filed suit against the State of Kansas, the KBI, and Ralston in the United States District Court for the District of Kansas. Lumry sought damages from the KBI for violations of his rights under the Fair Labor Standards Act of 1938

(FLSA), 29 U.S.C. § 201 (2006) *et seq*. He also sought reinstatement from the KBI and damages from Ralston for violations of his rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983 (2006). The federal court dismissed all claims on July 13, 2010.

Then, on June 4, 2010, Lumry filed this suit in Shawnee County District Court. In this suit, Lumry alleged that the KBI and Hawkins, Ralston, and Director Blecha terminated his employment with the KBI in violation of the retaliation provisions of the FLSA for his complaints about working uncompensated overtime. He sought reinstatement from the KBI and damages from Hawkins, Ralston, and Director Blecha. Lumry further alleged that Hawkins, Ralston, and Director Blecha retaliated against him in violation of the First Amendment and 42 U.S.C. § 1983. And finally, Lumry brought a claim of retaliatory discharge against the KBI for violation of the KMWMHL. The KBI, Hawkins, Ralston, and Director Blecha (the defendants) moved for summary judgment, which the district court granted. Lumry timely appealed, but he chose to abandon some of his previous arguments on appeal. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011) (issue not briefed by the appellant is deemed waived and abandoned).

On appeal, Lumry argues the district court erred in granting summary judgment to the defendants. Lumry maintains that the case should have been submitted to the jury because reasonable minds could differ as to the conclusions to be drawn from the evidence. Lumry contends that the district court erred in granting summary judgment on three separate issues: (1) whether Ralston and Hawkins meet the definition of an "employer" under the FLSA; (2) whether Lumry engaged in protected activity under the FLSA; and (3) whether Lumry may pursue a claim for retaliatory discharge under the KMWMHL even though the KBI is not an "employer" under the FLSA. Each of these issues will be discussed separately below, but first we examine our standard of review.

## STANDARD OF REVIEW

Questions of law, "including those at the heart of summary judgment decisions," are subject to unlimited review on appeal. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 221, 262 P.3d 336 (2011). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Law v. Law Company Building Assocs.*, 295 Kan. 551, 561, 289 P.3d 1066 (2012). When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to prevent summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). On appeal, the same rules apply. Therefore, this court looks at the evidence in a light favorable to Lumry and requires Lumry to come forward with evidence to establish a dispute as to a material fact. Summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus*, 291 Kan. at 768.

## THE FLSA CLAIM

Lumry's first claim centers on his assertion that the KBI, Hawkins, Ralston, and Director Blecha terminated his employment with the KBI in retaliation for his complaints about working uncompensated overtime in violation of the FLSA. This is a statutory claim under the antiretaliation provisions of the FLSA. See 29 U.S.C. § 215(a)(3) (2006). On appeal, Lumry abandons any claim against the KBI, which the federal district court found to be immune from suit under the doctrine of sovereign immunity. But Lumry argues, as he did below, that Ralston, Hawkins, and Director Blecha can be held liable in their individual capacities for several reasons. We begin by examining Lumry's assertion regarding the individual liability of agency employees.

*An individual may be liable in his or her individual capacity for FLSA violations if the individual is acting in the interest of the agency and meets the definition of an employer.*

Under the FLSA, a person must be an "employer" within the meaning of the statute to be held liable for violating an employee's rights under the Act. See 29 U.S.C. § 203(d) (2006). The FLSA defines an employer as *"any person* acting directly or indirectly in the interest of an employer in relation to an employee." (Emphasis added.) 29 U.S.C. § 203(d). The United States Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992).

There are no Kansas cases addressing individual employee liability for violations under the FLSA, so we turn to federal jurisprudence. See *Purvis v. Williams*, 276 Kan. 182, 188, 73 P.3d 740 (2003) (state courts should seek direction from federal courts when interpreting federal statutes). Because there are no Tenth Circuit Court of Appeals cases on point, we must turn to other federal circuit courts, which are split. Some federal circuits suggest that a public employee cannot be held liable for violation of the FLSA in his or her individual capacity because the official acts in the interest of an employer only in the context of his or her official capacity. See *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (citing *Welch v. Laney*, 57 F.3d 1004, 1011 [11th Cir. 1995]) (drawing parallel between FLSA and Family and Medical Leave Act [FMLA]).

But other courts, in fact a majority, have found that, based on the plain language of the FLSA, public officials may be held liable in their individual capacities for violations of the Act if they are acting in the interest of the agency and meet the definition of an employer. *Darby v. Bratch*, 287 F.3d 673, 680-81 (8th Cir. 2002) (equating definitions under the FMLA and the FLSA and finding that the language clearly includes persons other than the employer itself); *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965-66 (6th Cir.

1991). Likewise, federal regulations highlight the fact that "[a]s under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of the FMLA." 29 C.F.R. § 825.104(d) (2012); see *Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1282-84 (D.N.M. 2010) (noting that although Tenth Circuit has not addressed whether supervisors may be held individually liable as employers under the FLSA, majority of courts have found individual liability possible); see also 29 U.S.C. § 203(d).

We find no reason to depart from the majority of federal courts that have addressed this issue and find that, based upon the plain language of the FLSA, public officials may be held liable in their individual capacities for violations of the Act if they are acting in the interest of the agency and meet the definition of an employer.

We turn to whether Ralston, Hawkins, and Director Blecha meet the definition of employers under the FLSA.

*Neither Ralston nor Hawkins meets the definition of an "employer" under the FLSA.*

Lumry contends that Ralston and Hawkins meet the definition of employers because they both had substantial control over the terms and conditions of Lumry's work, they both maintained Lumry's employment records, and they both had supervisory authority over Lumry and were partly responsible for the alleged violation of the FLSA. Ralston and Hawkins contend that they do not meet the definition of employers under the FLSA because they did not have substantial control over the terms and conditions of Lumry's employment, and they did not have the ability to fire Lumry.

Although Lumry argues that summary judgment was not appropriate because "reasonable minds could differ as to whether Mr. Ralston and Mr. Hawkins meet the definition of an 'employer' under the FLSA," when the facts are undisputed, whether a party is an employer within the meaning of the FLSA is a question of law. See *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986); *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1986); *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) ("[T]he

determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law."). The facts in this case are not in dispute nor does Lumry identify any disputed facts. It is simply the application of the undisputed facts to the law to which Lumry objects. So we will next examine whether Ralston and Hawkins meet the definition of an "employer" under the FLSA as a matter of law.

To determine whether a person meets the definition of an employer or an employee under the FLSA, courts apply the "economic reality" test. *Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). "The economic reality test includes inquiries into whether the alleged employer [1] has the power to hire and fire employees, [2] supervises and controls employee work schedules or conditions of employment, [3] determines the rate and method of payment, and [4] maintains employment records." *Baker*, 137 F.3d at 1440. The test is based on the totality of the circumstances, and no one factor alone is dispositive. *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994).

In this case, the district court applied the economic reality test to conclude that Ralston and Hawkins did not meet the definition of an "employer" under the FLSA. The district court explained:

"[T]he Court cannot hold Hawkins and Ralston liable in their individual capacities because only Blecha had the authority to act in the interest of the KBI. The total economic reality of the relationship between Lumry and both Hawkins and Ralston did not create an employer-employee relationship. Hawkins and Ralston did not (1) fire Lumry or (2) control the conditions of his employment. While Hawkins and Ralston supervised Lumry and reported to their supervisors that Lumry's timesheets were intentionally falsified, they did not recommend any discipline for Lumry. Only Blecha appeared to have the authority, as a director, to place Lumry on administrative leave and terminate him. Therefore, Hawkins and Ralston are entitled to judgment as a matter of law . . . ."

When applying the economic reality test to this case, we find factors that weigh in favor of qualifying them as employers and factors that weigh against finding them as employers. First, we know that Ralston and Hawkins supervised and controlled Lumry's work schedule, they maintained his employment records, and they

investigated whether Lumry had been falsifying his timesheets without first obtaining Director Blecha's approval to conduct this investigation. On the other hand, we also know that Ralston and Hawkins did not have the power to fire Lumry or to place him on administrative leave, and they did not determine Lumry's rate and method of payment. The fact that Ralston and Hawkins began the investigation into Lumry's timesheets on their own certainly looks like they were acting like an employer; however, once they completed the investigation, they reported the results of the investigation up the chain of command leading us to conclude that they did not have the authority to handle the issue themselves. And although Ralston and Hawkins did not make any disciplinary recommendations regarding Lumry, they certainly knew that any adverse information they discovered about Lumry on this point would cause him to be fired.

To support his argument that these facts support a finding that Ralston and Hawkins were "employers," Lumry points to a number of cases where individuals have been found to be employers under the FLSA; however, each of those cases found such individuals had the authority to hire and fire employees. See *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) (chairman of the board found to be an employer because of operational control over employees and had authority to hire employees); *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 226 (5th Cir. 1991) (sheriff found to be an employer because of managerial responsibilities and substantial control over the terms and conditions of the employees' work such as hiring and firing); *Saavedra*, 748 F. Supp. 2d at 1295 (court denied motion to dismiss finding that individual had managerial capacity with the authority to hire and fire employees and supervised and controlled work schedules or conditions of employment to a degree). Courts have placed some emphasis on this factor, finding liability in cases where the defendants have the power to hire and fire. See *Saavedra*, 748 F. Supp. 2d at 1293. This is one key factor that is missing in this case. Therefore, these cases do not support Lumry's argument, they simply support the notion that an individual *can* be individually liable as an employer

under the FLSA, especially if the individual has the authority to hire and fire employees.

Instead, Kansas federal cases that have addressed the issue seem to suggest that an individual must have more than just managerial responsibilities to be considered an "employer." The FLSA, and the similarly worded FMLA, envisions someone with a corporate role beyond mere managerial responsibilities. *Mondaine v. American Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1186 (D. Kan. 2006) (citing *Williamson v. Deluxe Fin. Services*, No. 03-2358-KHV, 2005 WL 1593603, at *9 [D. Kan. 2005] [unpublished opinion]) (supervisor and HR manager did not have sufficient responsibility or stature within company to warrant imposition of personal liability under FMLA); see also *Al-Dahir v. Hamlin*, No. 10-CV-2571, 2011 WL 2580110, at *2 (D. Kan. 2011) (unpublished opinion) (defendant was "merely a manager" and because there was no indication he had any corporate role or position, he could not be individually liable for retaliatory discharge tort claim); 29 C.F.R. § 825.104(d) (2012) (indicating that under the FLSA, individuals such as "corporate officers" acting in the interest of an employer are individually liable for violations under the Act).

Applying the economic reality test established in *Baker*, and considering the totality of the circumstances, we conclude that Ralston and Hawkins do not meet the definition of employers under the FLSA. Therefore, Lumry's FLSA claim against Ralston and Hawkins in their individual capacities fails as a matter of law.

*Director Blecha meets the definition of Lumry's "employer" under the FLSA.*

Unlike Ralston and Hawkins, Director Blecha had the authority to act in the interests of the KBI. Only Director Blecha had the authority, as director, to place Lumry on administrative leave and terminate him. He clearly had a corporate role at the agency, serving as the equivalent of its chief executive officer. Therefore, the *Baker* economic reality test weighs in favor of finding that Director Blecha is an employer who a jury could potentially find individually liable under the FLSA, and the district court did not err in so finding.

So we will next examine whether the district court was correct to find, as a matter of law, that Director Blecha could not be found liable for retaliation against Lumry under the facts of this case.

*Lumry's statements did not place Director Blecha on notice that Lumry was asserting a claim under the FLSA.*

The FLSA sets forth employment rules concerning minimum wages, maximum hours, and overtime pay. 29 U.S.C. § 201 *et seq.* The Act contains an antiretaliation provision that forbids employers

"to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." (Emphasis added.) 29 U.S.C. § 215(a)(3).

Lumry maintains that the district court erred in granting summary judgment on his FLSA retaliation claim against Director Blecha. Lumry argues that his complaint about uncompensated overtime clearly suggested to his employer that he was asserting rights protected by the FLSA and, because reasonable minds could differ as to whether this constituted a complaint under the FLSA, the district court erred in granting summary judgment in favor of Director Blecha.

The defendants assert that Lumry's complaint was equivocal and did not explicitly invoke the protections of the FLSA. The defendants further argue that Lumry agreeing to still work some uncompensated overtime, just not as much as before, does not suggest a claim under the FLSA for overtime compensation.

Again, there is no dispute regarding Lumry's *sole* oral statement concerning working uncompensated overtime made prior to his termination. There is no credibility determination to be made; everyone agrees to the statement as quoted, to wit: Lumry stated he would "work an extra 5 hours a week and give you that extra time; but I'm not going to work 10 and 20 hours a week anymore, or more, of unclaimed overtime." The only issue is whether this statement gives rise to a retaliatory discharge claim under the FLSA.

In this case, no written claim was made to the KBI or Lumry's supervisors prior to his termination and no actual wage payment

claim was filed with the United States Department of Labor (DOL) under the FLSA until *after* Lumry was terminated. But recently, in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011), the United States Supreme Court addressed when a retaliatory discharge claim might exist before a wage-payment claim has been filed. In *Kasten*, an employee brought a retaliatory discharge claim based on the assertion that the employer had fired him for making a claim under the FLSA. Kasten had made numerous oral complaints about the unlawful placement of time clocks, including threatening a lawsuit.

The *Kasten* Court interpreted the " 'filed any complaint' " language in 29 U.S.C. § 215(a)(3) and held that oral complaints should also be considered. 131 S. Ct. at 1333-35. The *Kasten* Court concluded that either an oral or written complaint could be sufficient, but "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 131 S. Ct. at 1335. The Supreme Court heeded the concern expressed by the employer that oral complaints might leave employers "in a state of uncertainty about whether an employee (particularly an employee who seems unusually angry at the moment) is in fact making a complaint about [a FLSA] violation or just letting off steam." 131 S. Ct. at 1334. The Court pointed out that while a filing could be written or oral, it is a serious occasion and does require some degree of formality to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns. 131 S. Ct. at 1334-35.

Our court applied the holding in *Kasten* in *Deeds v. Waddell & Reed Inv. Management Co.*, 47 Kan. App. 2d 499, 280 P.3d 786 (2012), to determine whether Deeds' complaint about a new compensation policy qualified as evidence of a valid retaliatory discharge claim so as to avoid the granting of summary judgment against him. Deeds complained when his employer changed its compensation policy. Deeds told his employer that he would be satisfied if his employer either returned to the prior compensation

policy or if it instituted some other fair compensation plan. Our court held that the employer was not put on notice by the complaint because the employer would not recognize the request for some "fair compensation plan" as a claim under the Kansas Wage Payment Act. *Deeds*, 47 Kan. App. 2d at 508. Accordingly, summary judgment was proper. The *Deeds* court stated:

"Deeds' statements were too equivocal to place a reasonable employer on notice that Deeds was making some claim under the Kansas Wage Payment Act or that he intended to do so. Without some clear indication that Deeds was invoking any of the protections provided under the Kansas Wage Payment Act, there can be no claim against the employer for retaliation in response to the employee's exercise of his rights under that statute." 47 Kan. App. 2d at 508.

The *Deeds* decision is consistent with federal courts that have addressed the issue of the sufficiency of an employee's oral statements concerning FLSA violations since *Kasten*. See *Manfield v. Alutiiq Intern. Solutions, Inc.*, 851 F. Supp. 2d 196, 206 (D. Me. 2012) (applying *Kasten* standards, employee's statements pointing out discrepancies on two occasions between overtime worked and paycheck, without voicing an opinion regarding the legality of the discrepancy, insufficient to put employer on notice of his intentions); *Robillard v. Board of County Com'rs of Weld County Colorado*, No. 11-CV-03180-PAB-KMT, 2012 WL 4442822, at *4 (D. Colo. 2012) (unpublished opinion) (applying *Kasten* standard, plaintiff's allegation that he "voiced concerns regarding compensation for on-duty time and the application of the Comp Time Agreement" was too sparse and conclusory to establish a plausible claim under the FLSA retaliation provision); *Hawks v. Forest River, Inc.*, No. 3:09-CV-532-CAN, 2011 WL 5434241, at *8 (N.D. Ind. 2011) (unpublished opinion) (applying *Kasten* standards, employee's statement to her supervisor that she " 'was aware that the guys in our group were making 3 to 400 dollars more a week than [the women] were' " not sufficiently clear to indicate she was asserting rights protected by the statute); *Courtright v. Board of County Com'rs of Payne County, Okla.*, No. Civ-08-230-D, 2011 WL 2181954, at *11 (W.D. Okla. 2011) (unpublished opinion) (applying *Kasten* standard, employee's statement that he did not want to attend a training session on his day off without pay insufficient

to be understood by a reasonable employer as making an overtime wage complaint or otherwise asserting FLSA rights).

In this case, the district court relied on *Deeds* to reach its conclusion that Lumry had failed to assert his rights under the FLSA. The district court explained:

"[Lumry] failed to assert his rights under the FLSA's prohibition on uncompensated overtime when he refused to work ten to twenty hours of uncompensated overtime but also stated that he would work five hours of uncompensated overtime per week. 29 U.S.C. 207. Because Lumry's willingness to work some amount of uncompensated overtime is contrary to intending to file a FLSA complaint for uncompensated overtime, Lumry's statements did not adequately place Hawkins and the KBI on notice that he was asserting his rights under the FLSA."

The facts of this case are similar to the facts in *Deeds*. Here, Lumry's complaint about uncompensated overtime offered his employer an alternative rather than an outright demand. As in *Deeds*, Lumry allowed his employer to continue to allegedly violate his rights by agreeing to still work some uncompensated overtime. Lumry's complaint, the facts of which are undisputed, failed to explicitly invoke the protections of the FLSA and it failed to put his employer on notice that he was filing such a claim or that he intended to file a claim.

Therefore, based on the standards set out in *Kasten* and the cases to date interpreting it, we find that Lumry failed to allege sufficient facts to support a valid retaliatory discharge claim. Lumry failed to claim the protections of the FLSA and failed to notify the KBI that he was invoking those protections before he was fired. Moreover, the sole and undisputed statement Lumry made to his employer was equivocal with regard to a potential claim under the FLSA—while he complained about the uncompensated overtime, he said that he would continue to work some uncompensated overtime, just not as much as before. The option to continue working some uncompensated overtime does not suggest a claim under the FLSA. Therefore, even looking at the evidence in the light most favorable to Lumry, his claim fails. Consequently, the district court did not err in granting summary judgment on this claim.

## THE KANSAS MINIMUM WAGE AND MAXIMUM HOURS LAW (KMWMHL) CLAIM

*The KBI is not an "employer" under the KMWMHL, therefore the provisions of the KMWMHL do not apply to any action taken by the KBI.*

Under the KMWMHL, K.S.A. 44-1201 *et seq.*, all employers must pay their employees overtime wages for hours worked in excess of 46 hours per week. K.S.A. 44-1204(a). The KMWMHL, however, explicitly excludes from its definition of employer, "any employer who is subject to the provisions of the [FLSA]." K.S.A. 2012 Supp. 44-1202(d). In this case, the district court held that it was uncontroverted that the KBI is a FLSA regulated employer because Lumry conceded that point in his petition. In rejecting Lumry's argument, the district court stated:

"The Court cannot recognize a retaliatory discharge claim in violation of the KMWMHL in Lumry's case because the public policy underlying the KMWMHL was not undermined by Lumry's termination. The KMWMHL states that employers under the KMWMHL 'shall not include any employer who is subject to the provisions of the fair labor standards act,' and only employers are required to pay overtime compensation under the KMWMHL. [Citations omitted.] Because the KBI is subject to the FLSA as conceded by Lumry in Count I of the Petition, the KBI is not an employer under the KMWMHL. Thus, the KBI could terminate Lumry for complaining about overtime compensation without violating the KMWMHL."

Nevertheless, Lumry argues that his claim should survive because the court has found that the KBI is immune from lawsuits for damages under the FLSA, based on the Eleventh Amendment to the United States Constitution. See *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999) (finding state cannot be subject to suit in its own court for violations of FLSA and declaring provisions to the contrary at 29 U.S.C. § 216[b] unconstitutional); *Aaron v. State of Kansas*, 115 F.3d 813 (10th Cir. 1997).

Recently, in *Brown v. Ford Storage & Moving Co.*, 43 Kan. App. 2d 304, 224 P.3d 593 (2010), our court addressed a similar argument. In *Brown*, the plaintiff, a truck driver, asserted a KMWMHL overtime claim against his former employers, a business engaged in interstate commerce. In their defense, the defendants argued

they were exempt from the KMWMHL because they were subject to the FLSA. The plaintiff responded by arguing that because the defendants were exempt from the FLSA's overtime provisions, as they qualified for the Motor Carrier Act exemption, they should not also be exempt from the KMWMHL's overtime provisions. The *Brown* court relied on the plain language of K.S.A. 44-1202(d) to reject the plaintiff's argument. The court stated that because the defendants were subject to the FLSA (for example, the defendants still could not pay a driver lower wages based on gender nor could they employ underage drivers), the KMWMHL did not apply to them, irrespective of the fact that the defendant was exempt from the FLSA's overtime provisions. *Brown*, 43 Kan. App. 2d at 317-18. This analysis and reasoning was recently applied by the United States District Court for the District of Kansas in *Vanartsdalen v. Deffenbaugh Industries, Inc.*, No. 09-2030-EFM, 2011 WL 1002027, at *4-5 (D. Kan. 2011) (unpublished opinion) (employer, although exempt from the FLSA overtime requirements based on motor carrier exception, was still subject to FLSA and thus not covered by the KMWMHL).

Moreover, regardless of the KBI's immunity from tort liability, it is clearly subject to the provisions of the FLSA. In fact, Lumry asserts in his brief that following his termination he filed a formal complaint with the United States Department of Labor (DOL), which concluded that overtime pay had not been properly paid to Lumry and nine other employees. According to Lumry, the KBI, through Director Blecha, agreed to comply with the findings of the DOL. See also K.A.R. 1-5-24 ("[E]mployees of the state who are eligible to receive overtime compensation under the [FLSA], as amended, shall be compensated for overtime as provided in that act."). We note that in *Alden* the United States Supreme Court did not suggest that the FLSA does not apply to state employees but suggested that while a state employee cannot bring a private suit against a state, the FLSA authorizes the United States to bring suit on such an employee's behalf:

"The difference between a suit by the United States on behalf of the employees and a suit by the employees implicates a rule that the National Government must itself deem the case of sufficient importance to take action against the State; and

history, precedent, and the structure of the Constitution make clear that, under the plan of the Convention, the States have consented to suits of the first kind but not of the second." *Alden*, 527 U.S. at 759-60.

The reasoning in *Brown* also applies to this case. Here, Lumry argues that his claim should survive because the court has found that the KBI is immune from lawsuits for damages under the FLSA based on the Eleventh Amendment. Based on the plain language of K.S.A. 2012 Supp. 44-1202(d) and the *Brown* and *Vanartsdalen* decisions, the KBI is still subject to the FLSA, even though enforcement by way of a private action against the State may be foreclosed. Accordingly, the KBI is exempt from the provisions of the KMWMHL and Lumry's claim to the contrary fails.

### THE COMMON-LAW TORT OF RETALIATORY DISCHARGE

Finally, Lumry asserts that the KBI misunderstands his claim and that he is really making a common-law tort claim of retaliatory discharge based on the public policy exception to the Kansas employee-at-will doctrine. He contends that even if his employment with the KBI is not included within the statutory language of the KMWMHL, this court should look to the KMWMHL as evidence of a well-established legislative public policy against retaliation targeted at employees who exercise their right to lodge complaints over fair compensation for overtime worked. He claims the public policy is "embedded" in the KMWMHL. In response, the KBI contends that it is exempt from coverage under the KMWMHL and, accordingly, it is exempt from any claims arising under it, whether they be statutorily prohibited or embedded in the public policy of the KMWMHL. The KBI points out that Lumry's claim in his amended petition was based entirely on the state statute. The district court considered the common-law tort claim but held that because the KMWMHL does not apply to the KBI "the cause of action could not create a right to overtime compensation under the KMWMHL that Lumry never had." We first examine whether Lumry properly preserved a common-law tort claim of retaliatory discharge.

*Lumry's claim is not barred by his failure to specifically plead a cause of action for the common-law tort of retaliatory discharge.*

The KBI asserts that Lumry failed to plead a common-law tort claim of retaliatory discharge, but instead made only a statutory claim. Whether a pleading is sufficient to state a cause of action is a question of law. *Unruh v. Purina Mills,* 289 Kan. 1185, 1191, 221 P.3d 1130 (2009).

As the KBI points out, Lumry's sole claim in Count III of his amended petition was stated as one for "retaliation under the Kansas Minimum Wage and Maximum Hours Law" and he references K.S.A. 44-1201 *et seq.* Even when confronted with a motion to dismiss, Lumry did not assert a tort claim but continued to allege a statutory claim under the KMWMHL. Through the final case management order, Lumry did not list or even allude to a common-law action in tort for retaliatory discharge but simply claimed that the KMWMHL provided a private cause of action. In other words, claims under the statute were not limited to prosecution solely by the Kansas Secretary of Labor. See K.S.A. 2012 Supp. 44-1202(a); K.S.A. 44-1210(b). The deadline for discovery had passed. It was not until responding to the KBI's summary judgment motion, after the case management order deadline had long passed for filing any amended pleadings and discovery had closed, that Lumry first alluded to a common-law tort claim as part of his cause of action. See K.S.A. 2012 Supp. 60-216(b)(1)(H). Although he did file at least one amended petition, he did not amend his petition to assert anything other than a statutory claim under the KMWMHL. Clearly, this began as a statutory claim.

But Kansas adheres to notice pleading. In other words, a pleading is sufficient if it contains "[a] short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." K.S.A. 2012 Supp. 60-208(a). Substance will prevail over form. *Baska v. Scherzer,* 283 Kan. 750, 755, 156 P.3d 617 (2007). A plaintiff is not required to categorize causes of action or cite statutory authority or common-law bases for the suit. *Golden v. Den-Mat Corporation,* 47 Kan. App. 2d 450, 461, 276 P.3d 773 (2012). In fact, when faced with a motion to dismiss for failure to

state a claim, the court must decide whether facts state a claim as espoused by the plaintiff or on any other possible theory the court can divine. *Nungesser v. Bryant*, 283 Kan. 550, 559, 153 P.3d 1277 (2007). A rule of liberal construction applies when judging whether a claim has been stated. *Montoy v. State*, 275 Kan. 145, 148, 62 P.3d 228 (2003). The petition is not intended to govern the entire course of the case. *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 918, 257 P.3d 287 (2011).

Moreover, a pleader is permitted to shift the theory of his or her case as the facts develop, as long as he or she has fairly informed the opponent of the transaction or operative facts involved in the litigation. "The determination of whether a party's claim is a late shift in the thrust of the case which prejudices the opponent is left to the sound discretion of the trial court." *Montoy*, 275 Kan. at 149-50; see generally *Viernow v. Euripides Development Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998) (issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed. R. Civ. Proc. 15); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir.1991) (a plaintiff should not be prevented from pursuing a valid claim just because he or she did not include it in his or her complaint, provided that a late shift in the case will not prejudice the other party in maintaining his or her defense).

In this case the district court apparently found that there was no surprise or prejudice because it considered the claim. We do not find this to be an abuse of discretion. The KBI actually first raised the issue of the common-law tort of retaliatory discharge in its summary judgment motion by contending that such a claim also failed as a matter of law. So it clearly anticipated the claim. All the relevant facts are the same, and it does not appear additional discovery would be needed. The case management order makes several general claims of retaliatory discharge even though it does not label the cause of action. There was no pretrial order yet that would have defined and locked in the issues. See *Montoy*, 275 Kan. at 149 (once a pretrial order is made it supercedes the pleadings and controls the subsequent course of the action).

Accordingly, we find that under these facts it was not an abuse of discretion for the district court to allow Lumry to allege a common-law tort claim of retaliatory discharge for the first time in his responsive pleading to the KBI's motion for summary judgment. So we next turn to the legal and factual substance of his claim.

*The KMWMHL supplies the framework to support a common-law retaliatory discharge claim, but Lumry has failed to allege that the remedies provided under the FLSA are inadequate.*

Although Kansas has long adhered to an employment-at-will doctrine, which holds that absent an express or implied contract employees and employers may terminate an employment relationship at any time for any reason, our appellate courts have found that limited exceptions are warranted when necessary to "protect a strongly held state public policy from being undermined." *Campbell v. Husky Hogs*, 292 Kan. 225, 229, 255 P.3d 1 (2011). These exceptions center around situations in which employees have been fired or had their employment adversely affected when they exercised certain statutory or constitutional rights. Such actions have been allowed to proceed under a common-law tort theory for retaliatory discharge. To date, the Kansas Supreme Court has recognized public policy exceptions to the employment-at-will doctrine in five circumstances: (1) filing a claim under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2006) *et seq.*; (4) exercising a public employee's First Amendment right to free speech on an issue of public concern; and (5) making a claim under the Kansas Wage Payment Act. 292 Kan. at 228, 236-37. Lumry asks us to add to that list, (6) making a claim under the FLSA. So we next turn to how the court determines if a public policy exists which requires protection under a common-law tort theory.

In *Husky Hogs*, the Supreme Court recognized three situations courts are faced with when determining whether the legislature has declared a public policy: (1) The legislature has clearly declared the state's public policy; (2) the legislature enacted statutory provisions from which public policy may reasonably be implied, even

though it is not directly declared; or (3) the legislature has not made a clear statement of public policy, nor can it be reasonably implied. It went on to acknowledge that while public policy may be determined by both the legislature and the courts, courts must respect legislative expressions when ascertaining whether a public policy exists. 292 Kan. at 230.

The KMWMHL contains a specific provision that prohibits any employer from discharging an employee for making a complaint against the employer under the KMWMHL. K.S.A. 44-1210(b). We do not have to guess at the public policy. Employers, as defined by the Act, are prohibited from taking action against an employee who has complained regarding wages and hours. The language is clear. The legislature was clear. But does this mean that the legislature, by specifically excluding FLSA-covered employers from the reach of the KMWMHL is also excluding FLSA-covered employers from the reach of any common-law tort claims for retaliatory discharge as argued by the KBI and as the district court held? In other words, the KBI argues that the legislature did not fail to provide a statutory claim for retaliatory discharge; it provided a statutory claim and specifically excluded FLSA-covered employees from its reach. Accordingly, must we consider that its omission expresses the opposite legislative intent to that stated in the KMWMHL? We believe the answer is no.

This situation is indistinguishable from that faced in *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 85 P.3d 1183 (2004). In *Hysten*, our Supreme Court was asked to respond to the following certified question from the 10th Circuit Court of Appeals:

"Independent of the Kansas alternative remedies doctrine, does Kansas law— [citations omitted]—recognize an action in tort based on an employer's discharge of an employee in retaliation for the employee's exercise of rights under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (2000)? In other words, will the Kansas Supreme Court extend the public policy exception to the at-will employment doctrine to authorize a state tort action [for] retaliation for filing a FELA claim?" 277 Kan. at 551-52.

We note that the FELA gives railroad workers, not covered by state workers compensation laws, the right to sue their employer

for damages if injured on the job. Burlington Northern argued that recognition of a wrongful discharge claim for FELA retaliation would not further the purpose of the Kansas Workers Compensation Act because FELA is a federal rather than a state statute. In addition, Burlington Northern argued that the Kansas Workers Compensation Act expressly excluded claims arising under FELA. 277 Kan. at 556; see K.S.A. 44-506. The Supreme Court rejected this argument as "unconvincing." 277 Kan. at 556.

"Regardless of whether FELA or the Kansas Workers Compensation Act supplies the framework to support an injured worker's pursuit of recovery, the public policy underlying that framework would be undermined if the worker could be fired for the exercise of his or her statutory right. Such a situation effectively releases an employer from the obligation of the statute. [Citation omitted.]

"In addition, the mere fact that the Kansas Workers Compensation Act is designed to govern claims not governed by FELA tells us nothing about the nature of the policy underlying either statute. It tells us only that the Kansas Legislature was careful not to duplicate protections for on-the-job injuries already provided certain Kansas citizens because of their dual status as employees covered by FELA." 277 Kan. at 556-57.

This is the heart of Lumry's argument. Just as the Kansas Workers Compensation Act supplies the framework to support a retaliation claim under the FELA, so the KMWMHL supplies the framework to support a retaliation claim under the FLSA. The district court's finding that Lumry's common-law "cause of action could not create a right to overtime compensation under the KMWMHL that Lumry never had" misinterpreted his argument. The cause of action he asserts is a state common-law tort claim for seeking to exercise his FLSA rights, not his KMWMHL rights. Furthermore, our Supreme Court's analysis in *Hysten* certainly supports a similar public policy claim under the FLSA.

But that does not end our inquiry. As in *Hysten*, the next question that must be examined is whether the statutory remedy under the FLSA is adequate, thereby precluding the common-law remedy. This is commonly referred to as the alternative remedies doctrine.

" 'Under the alternative remedies doctrine, a state or federal statute would be substituted for a state retaliation claim if the substituted statute provides for an adequate alternative remedy. [Citations omitted.] The question to ask in resolving

recognition of a state tort claim for retaliatory discharge is whether the statutory remedy is adequate and thus precludes the common-law remedy. [Citation omitted.]' [Citation omitted.]" 277 Kan. at 561.

In other words, in order for this court to find that a claim for retaliatory discharge for violation of the FLSA exists under Kansas common law, we must find not only that a public policy exists to support such an action, but also that a claimant has no adequate alternative remedy under state or federal statutory law. Lumry makes no such claim here, arguing only the public policy prong of the analysis.

There is some support in federal jurisprudence for finding that a state common-law tort claim is precluded by the alternative statutory remedy provided in the FLSA. See *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997); *Conus v. Watson's of Kansas City, Inc.*, No. 11-CV-2149-JAR/KGG, 2011 WL 4348315 (D. Kan. 2011) (unpublished opinion). But in *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 202, 967 P.2d 295 (1998), decided after *Conner*, our Supreme Court made it clear that the decision as to whether an adequate alternative remedy exists is to be based on Kansas Supreme Court precedent, "not on federal rulings interpreting Kansas law." Because we have no Kansas Supreme Court precedent regarding whether the FLSA provides an adequate alternative remedy and because Lumry presents no argument on appeal that the FLSA remedy which *is* available to him through his retaliatory discharge claim against Director Blecha is inadequate, he has waived any such claim. See *Superior Boiler Works*, 292 Kan. at 889 (issue not briefed by the appellant is deemed waived and abandoned). Accordingly, we are unable to conclude, on the present showing, that Kansas recognizes a common-law tort for retaliatory discharge in violation of the FLSA.

*Lumry is unable to establish a prima facie case for any common-law retaliatory discharge claim.*

But even if Kansas were to recognize a common-law retaliatory discharge claim for violations of the FLSA, Lumry is still unable to avoid summary judgment.

The elements of a prima facie case of a state retaliatory discharge claim generally include: (1) Plaintiff exercised a statutory or constitutional right recognized as a basis for a retaliatory discharge claim; (2) the employer had knowledge of plaintiff's exercise of that right; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity and the termination. *Husky Hoggs*, 292 Kan. at 235 (Kansas Wage Payment Act retaliation claim); *Goodman v. Wesley Med. Center*, 276 Kan. 586, 590, 78 P.3d 817 (2003) (whistleblower retaliation claim); *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n*, 272 Kan. 546, 554, 35 P.3d 892 (2001) (workers compensation retaliation claim). Only an employer is liable for the common-law tort of retaliatory discharge. *Rebarchek*, 272 Kan. at 562.

Kansas cases upholding a cause of action for the common-law tort of retaliatory discharge involve the actual filing of a written complaint or document *prior* to termination. See, *e.g.*, *Husky Hogs*, 292 Kan. at 226; *Goodman*, 276 Kan. at 588; *Rebarchek*, 272 Kan. at 548; *Palmer v. Brown*, 242 Kan. 893, 894-95, 752 P.2d 685 (1988). We do not need to decide here whether the *Kasten* rule— that clear and detailed *oral* complaints are sufficient—also applies to any state common-law tort claim Lumry may have because even if it does, for the same reasons that Lumry cannot establish a prima facie case for retaliation against Director Blecha under the FLSA, he cannot meet the first two elements of a common-law tort claim against the KBI. Lumry's complaint regarding working more than 5 hours of uncompensated overtime failed to explicitly invoke the protections of the FLSA, and it failed to put his employer on notice that he was filing such a claim or that he intended to file a claim.

Accordingly, even though it reached the same conclusion, albeit for different reasons, the district court did not err in finding that Lumry's common-law tort claim for retaliatory discharge also fails. See *State v. Murray*, 285 Kan. 503, 533, 174 P.3d 407 (2008) (district court's correct result may be upheld for alternative reasons).

For the above and foregoing reasons, we affirm the grant of summary judgment in favor of the defendants.

\* \* \*

STANDRIDGE, J., concurring in part and dissenting in part: I

agree with the majority that defendants Kelly Ralston and Clint Hawkins do not meet the definition of "employer" under the Fair Labor Standards Act (FLSA) but that defendant Robert Blecha qualifies as an employer as defined therein. However, I respectfully dissent from that part of the majority opinion holding Keith Lumry is precluded from pursuing his common-law claim of retaliatory discharge against the Kansas Bureau of Investigation (KBI) because there is an adequate alternative remedy as a matter of law. I further dissent from that part of the majority opinion concluding that the statements made by Lumry were insufficient as a matter of law to qualify as protected activity under the FLSA. Accordingly, I would reverse the district court's decision to grant summary judgment on Lumry's FLSA claim in favor of Blecha as well as the district court's decision to grant summary judgment on Lumry's common-law retaliatory discharge claim against the KBI and remand both claims for a trial so the jury could resolve the issue of material fact in dispute: whether Lumry's complaints would have provided a reasonable employer with fair notice that he was invoking rights under the FLSA.

1. *Based on the record presented at the summary judgment stage of these proceedings, there is insufficient evidence to conclude as a matter of law that the FLSA is a viable alternative remedy for Lumry's retaliatory discharge claim against the KBI.*

The district court granted summary judgment in favor of the KBI on Lumry's FLSA claim that the agency violated 29 U.S.C. § 215(a)(3) (2006) by terminating his employment in retaliation for complaints he made about working uncompensated overtime. Specifically, the district held that, as an agency of the State of Kansas, the KBI was immune from liability for damages under the FLSA pursuant to the Eleventh Amendment to the United States Constitution. See *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999); *Adams v. State of Kansas*, 934 F. Supp. 371 (D. Kan. 1996), *aff'd* 116 F.3d 489 (10th Cir. 1997). Lumry did not appeal from the district court's decision in this regard; thus, there is no dispute here that the KBI is constitutionally protected from a suit for damages under the FLSA even if, in fact, the KBI

fired Lumry in retaliation for engaging in protected activity under that statute.

The district court also granted summary judgment in favor of the KBI on Lumry's common-law retaliatory discharge claim against the agency. Specifically, the district court concluded that the public policy underlying the Kansas Minimum Wage and Maximum Hours Law (KMWMHL) was not undermined by Lumry's discharge. But all three judges on this panel conclude otherwise. After a well-reasoned analysis grounded in Kansas legal precedent, the majority holds—and I agree—that the KMWMHL embodies a strongly held public policy in Kansas that justifies recognizing a limited exception to the employment-at-will doctrine. Although legally recognizing this exception, the majority ultimately affirms the district court's decision to grant summary judgment in favor of the KBI on the common-law retaliatory discharge claim. Specifically, the majority holds Lumry is precluded from pursuing this claim because he failed to affirmatively establish why his FLSA claim against Blecha as an individual does not provide him with an adequate alternative remedy. I believe the majority's holding is both procedurally and substantively flawed.

a. *Lumry has not procedurally waived or abandoned his right to bring a common-law retaliatory discharge claim.*

Procedurally, I take issue with the underlying legal premise presented by the majority—without any explanation or supporting authority—that Lumry bears the burden on summary judgment to affirmatively establish that he has no adequate alternative remedy under state or federal statutory law before he can proceed with his common-law claim. Significantly, the majority relies on this unendorsed legal premise to conclude that Lumry waived and abandoned his right to bring a common-law retaliatory discharge claim against the KBI "because Lumry presents no argument on appeal that the FLSA remedy which is available to him through his retaliatory discharge claim against Director Blecha is inadequate."

Simply put, there is no support in the law for the majority's conclusion in this regard. The existence of an alternative remedy is an affirmative defense, so it is the defendant's obligation to raise

the issue on summary judgment. If the defendant fails to do so, the plaintiff has no obligation to address it to avoid summary judgment. For example, if the defendant files for summary judgment based solely on a statute of limitations argument, the plaintiff does not have to present evidence supporting each substantive element of his or her claim to defeat the summary judgment. That is also true even if the issue is one on which the plaintiff bears the burden.

To that end, Kansas caselaw, including but not limited to all of the cases cited by the majority in its opinion on this issue, suggests that—rather than an affirmative matter that must be proven by a plaintiff before he or she can proceed with a cause of action—the availability of an adequate alternative remedy is a matter that can be properly raised by the court *sua sponte* or by the defendant as an affirmative defense. See *Campbell v. Husky Hogs*, 292 Kan. 225, 226, 255 P.3d 1 (2011) (reversing district court's *sua sponte* holding that remedies available for violating Kansas Wage Payment Act [KWPA] provided adequate alternative remedy for plaintiff's common-law retaliatory discharge claim); *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 108 P.3d 1183 (2004) (responding to certified question from the 10th Circuit Court of Appeals after *defendant filed motion to dismiss* in federal court case alleging Federal Employers Liability Act provided an adequate alternative remedy for plaintiff's common-law retaliatory discharge claim); *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 967 P.2d 295 (1998) (responding to certified question from the 10th Circuit Court of Appeals after *defendant filed motion for summary judgment* in federal court case alleging Occupational Safety & Health Administration provided an adequate alternative remedy for plaintiff's common-law retaliatory discharge claim); see also *Conner v. Schnuck Markets, Inc.*, 906 F. Supp. 606, 608 (D. Kan. 1995) (*defendant filed motion for summary judgment* alleging FLSA provided an adequate alternative remedy for plaintiff's common-law retaliatory discharge claim), *aff'd* 121 F.3d 1390 (10th Cir. 1997); *Conus v. Watson's of Kansas City, Inc.*, No. 11-CV-2149-JAR/KGG, 2011 WL 4348315, at *2 (D. Kan. 2011) (unpublished opinion) (same).

Consistent with the cases cited above, Kansas legal commentators also take the view that the alternative remedies doctrine is not a matter that must be pleaded by the plaintiff, but instead is an affirmative defense to a wrongful discharge claim such as the one presented here. See *Twenty Years After Murphy v. City of Topeka: An Overview of Kansas Retaliatory and Public Policy Wrongful Discharge Law*, 72 J.K.B.A. 20, 28-29 (Feb. 2003) (listing adequate alternative remedy doctrine as the first of many affirmative defenses available to common-law claims of wrongful discharge).

In sum, I simply am not persuaded that Lumry has waived and abandoned his right to bring a common-law retaliatory discharge claim against the KBI.

b. *There is insufficient evidence to conclude as a matter of law that the FLSA retaliatory discharge claim against Blecha is an adequate alternative remedy for a common-law retaliatory discharge claim against the KBI.*

As a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). "[A] suit for money damages may be prosecuted against a state officer in his [or her] individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself [or herself], so long as the relief is sought not from the state treasury but from the officer personally." *Alden*, 527 U.S. at 757. However, if the state is obligated to pay any damage award entered against the state official, the Eleventh Amendment bars the suit. *Cornforth v. University of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001) (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 [1974]), *cert. denied* 534 U.S. 1162 (2002). The *Cornforth* court went on to hold, however, that a state cannot extend its sovereign immunity to an employee sued in his or her individual capacity if the state has voluntarily assumed an obligation to indemnify such employee, regardless of whether state monies are ultimately used to satisfy a judgment obtained against the employee. 263 F.3d at 1133.

There is no question that Lumry's FLSA suit seeks money damages from Blecha in his individual capacity. But under the Kansas Torts Claim Act (KTCA), K.S.A. 75-6101 *et seq.*, a governmental entity is liable for the negligent or wrongful acts or omissions of its employees if the employees are acting within the scope of their employment. K.S.A. 2012 Supp. 75-6103(a). To that end, a governmental entity is obligated, with certain exceptions, to not only provide a defense for employees defending actions under the KTCA but also must indemnify its employees against damages for injury or damage caused by the employees while acting within the scope of their employment. K.S.A. 2012 Supp. 75-6108; K.S.A. 75-6109; K.S.A. 75-6116; see also *King v. Pimentel*, 20 Kan. App. 2d 579, 890 P.2d 1217 (1995).

Based on the legal principles cited above, a determination regarding whether there is an adequate alternative remedy for Lumry under the FLSA necessarily would require this court to conduct further analysis by applying the relevant provisions of the KTCA to the specific facts presented in this case. As the majority notes, the parties did not brief this issue. Given my belief that, as an affirmative defense, it was the defendant's obligation to raise the issue on summary judgment, I find it improper to raise the issue *sua sponte* as the majority has done here and, even if it had been proper, I simply cannot conclude as a matter of law from the summary judgment record before us that the FLSA retaliatory discharge claim against Blecha ultimately would be an adequate alternative remedy for a common-law retaliatory discharge claim against the KBI.

*2. Lumry provided sufficient evidence to establish a prima facie case of retaliatory discharge.*

Lumry has the burden of demonstrating that the defendants engaged in retaliatory conduct. To establish a prima facie case of retaliation, Lumry must show: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. See *Husky Hogs*, 292 Kan. at 235. The United States Supreme Court and the Tenth Circuit Court of Appeals have

emphasized that the burden of establishing a prima facie case is slight, relatively lax, and not onerous. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (burden of establishing prima facie case is "not onerous"); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (burden of establishing prima facie case is "slight"); *Annett v. University of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004) (burden of establishing prima facie case is "relatively lax"). Furthermore, the burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Notwithstanding this light burden, the majority finds as a matter of law that the oral complaints Lumry made about working overtime are insufficient to make a prima facie showing that Lumry engaged in protected activity.

With regard to this first prong of a prima facie case of retaliation, the United States Supreme Court explained that oral complaints constitute protected activity when such complaints provide the employer with "fair notice" that the employee is invoking rights under the FLSA. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) ("[T]he phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns."). Given *Kasten* is binding precedent, the majority readily acknowledges that both oral and written complaints can constitute protected activity under the FLSA. But the majority expressly declines to extend the *Kasten* "oral complaint" rule to a common-law retaliation claim such as the one brought by Lumry here. Although the elements necessary to establish a prima facie case of FLSA retaliation are identical to that of a prima facie case of common-law retaliation, the majority cites to a range of pre-*Kasten* cases in which Kansas courts have found the actual filing of a written complaint or document prior to termination to constitute protected activity in the context of a claim of common-law retaliation.

As a preliminary matter, I simply am not persuaded that the pre-*Kasten* cases cited by the majority stand for the legal proposition that only a written complaint will constitute protected activity in the context of a common-law retaliation claim. Moreover, even if I was persuaded that these cases limited protected activity in such a way, I would find such a proposition legally unsound in light of the holding in *Kasten*, which specifically instructs that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 131 S. Ct. at 1335.

Applying the legal principles set forth by the United States Supreme Court in *Kasten* to the issue presented here, summary judgment is improper in this case if an inference can be made from the evidence presented that a reasonable employer would have understood the context in which Lumry made his complaints to be an assertion of rights protected by the FLSA. Notably, the context—or factual backdrop—within which Lumry made his complaints includes the undisputed fact that working overtime, off the clock, without pay, in violation of the FLSA, was a practice that was both encouraged and expected by the KBI and Lumry's supervisors for over a decade. Viewing the evidence in a light most favorable to Lumry, and given the content of the complaint and the context in which it was made, I believe Lumry's stated objections to working unpaid overtime constitute clear and detailed complaints from which a reasonable employer could have understood it to be a call for protection under the FLSA.

I am not persuaded, as is the majority, that the facts of this case are similar to the facts in *Deeds v. Waddell & Reed Invst. Mgmt. Co.*, 47 Kan. App. 2d 499, 280 P.3d 786 (2012). The following summary of the facts in *Deeds* readily demonstrate that they are easily distinguishable from the facts here.

- Deeds started with a base salary of $77,000, plus commissions based on (1) sales production and (2) ongoing client servicing. Thus, the commissions for selling new accounts were
  - 20 percent of revenues in the first year,

- 10 percent in the second year,
- 5 percent in the third and fourth years, and
- 2.5 percent for each year following (this was called a "trailer" commission).

- Waddell & Reed changed the commission schedule effective July 1, 2005.
- The new schedule phased out the trailer commission; it no longer would be paid after July 1, 2007.
  - Deeds complained about the 2005 commission change to management at least five times.
  - Deeds complained to his supervisor about what he perceived to be the retroactive nature of the change; Deeds felt that Waddell & Reed should keep paying him trailer commissions for sales he made prior to July 1, 2005.
  - Deeds later complained to his supervisor's supervisor that he did not believe " 'it was right' " to change the commission structure.
  - Deeds complained to both of these individuals again at some later point. When the supervisor asked Deeds what he wanted, Deeds answered, " 'A fair compensation plan or return of those trailer commissions.' "
- In early 2007, the supervisor told Deeds he would take Deeds' request to management and get back to him.
- Waddell & Reed fired Deeds on April 9, 2007. The supervisor told Deeds that Waddell & Reed decided not to change the commission schedule, so the company terminated Deeds' employment because management knew Deeds was not going to be happy about the decision. *Deeds*, 47 Kan. App. 2d at 501.

About a year after Deeds was fired, he filed a wage claim under the KWPA with the Kansas Department of Labor for more than $1 million. It was only after he filed this claim that Deeds asserted his belief that the trailer commissions vested as earned wages at the time of the sale and thus had to be paid to him every year as long as the account remained with Waddell & Reed, regardless of whether he serviced the account or whether he was even employed by the company at all.

Based on these facts, the panel in *Deeds*—of which I was a member—held that a reasonable employer simply could not have construed Deeds' complaints about the new commission system to be a claim under the KWPA for unpaid wages due and owing. 47 Kan. App. 2d at 508. In other words, the right asserted by Deeds—the right to a fair compensation plan as an employee at will—is not the type of right protected by the KWPA.

Here, Lumry told Hawkins, "I'll work an extra 5 hours a week and give you that extra time; but I'm not going to work 10 and 20 hours a week anymore, or more, of unclaimed overtime." This latter option suggests Lumry is making a claim under the FLSA because it involves "an assertion of rights protected by the [FLSA] and a call for their protection." *Kasten*, 131 S. Ct. at 1335. Unlike Deeds' complaints about his displeasure at the change in commission structure for sales representatives going forward, I believe the complaint about unpaid overtime lodged by Lumry here is precisely the type of right protected by the FLSA.

Viewing the evidence in a light most favorable to Lumry, and given the content of the complaint and the context in which it was made, I believe Lumry's stated objections to working unpaid overtime constitute clear and detailed complaints from which a reasonable employer could have understood Lumry was asserting his right to refuse Hawkins' demands that he work 10 to 20 hours per week of overtime without pay. Although the majority makes much of the fact that Lumry may have acquiesced to working a limited amount of overtime without pay, this fact neither detracts from nor negates the undisputed fact that Lumry's objection constituted a clear and detailed complaint from which a reasonable employer could have understood he was asserting his right to refuse Hawkins' demands that he work overtime without pay. Lumry's willingness to work *some* unpaid overtime—which indisputably is still a wage act violation—does not legally nullify the effect of his complaint. By the majority's reasoning, a woman who complains of sexual harassment by telling her male boss, "You can say whatever crude things you want about my body, but don't you touch me again," has failed to make a complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a)

(2006), because she is willing to accept some improper and prohibited conduct to keep her job. I don't think so. If that woman is then fired, I believe she gets to take her retaliation claim to a jury.

Because I believe Lumry has provided sufficient facts from which a jury could conclude that his statement was protected activity, I would reverse the district court's decision to grant summary judgment on Lumry's FLSA claim against Blecha as well as on Lumry's common-law retaliatory discharge claim against the KBI and remand both claims for trial so the jury could resolve this issue of material fact.