*168 OPINION OF THE COURT
Michael R. Juviler, J.
1. THE ISSUES
This is a written version of an oral decision rendered after a hearing on a motion to suppress property seized from the defendant’s employment locker. The issue is the reasonableness of the warrantless search of the defendant’s locker at the post office where he worked as a United States Postal Service police officer. The motion calls into question the scope and effect of a United States Postal Service regulation purporting to authorize the search, and the applicability of the Federal and State constitutional provisions against "unreasonable searches and seizures” to the search of a public employee’s locker or desk. (See, US Const 4th Amend; NY Const, art I, § 12.) These issues have rarely, if ever, been treated in reported New York cases.
The defendant has been indicted for murder in the second degree. He is alleged to have shot to death Robert Brown on a street immediately outside the main post office in downtown Brooklyn, where the defendant was employed.
The defendant contends that he had a reasonable expectation of privacy in his locker, and no search warrant or consent to search had been obtained.
The People have the burden of going forward with evidence to show the lawfulness of the seizure of the property. Then it becomes the defendant’s burden to show an unlawful seizure (People v Pettinato, 69 NY2d 653).
On the basis of the credible testimony and the exhibits I make these findings of fact and mixed findings of fact and law:
2. THE SHOOTING AND THE DEFENDANT’S STATEMENTS
On the evening of June 28, 1990, Postal Police Officer Kenneth Ashworth heard shots coming from Johnson Street outside the main post office in downtown Brooklyn. When he arrived at the scene, he saw the defendant, who was in uniform, and recognized him as a colleague in the Postal Police Service. He also saw a man lying on the street.
Because Ashworth had heard shots he had drawn his own gun, but he did not point it at the defendant. He asked the defendant what had happened. The defendant said that the man (later identified as Robert Brown) had tried to take the *169 woman’s purse and had grabbed the defendant, reached behind his back, and threatened to kill the defendant.
Ashworth asked the defendant whether he had shot the man, and the defendant said yes. The defendant was dazed, apparently from the effect of shooting someone while on duty.
At about the same time, Postal Inspector Biegelman came upon the scene. He too recognized the defendant as a colleague.
He asked the defendant what had happened. The defendant answered, "I shot him.” Biegelman asked, "Why?” The defendant’s answer was similar to that given Ashworth.
Biegelman asked whether the man had a weapon; the defendant stared at Biegelman as if in shock and did not answer the question.[1]
Inspector Biegelman saw that there was no weapon near the body of Robert Brown, and that the woman had left the scene. He and Officer Ashworth ran after her and caught up with her. She identified herself as Michelle Green and confirmed the defendant’s statements about what had happened.
On-the-spot examination of the defendant’s service firearm showed that it contained six spent shells.
Biegelman found two civilian witnesses who said that they had seen the shooting.
Because the defendant was in mental trauma from the shooting he was put in an ambulance to go to Long Island College Hospital.
3. THE SEARCH OF THE LOCKER
About one hour after the incident on the street, and while the defendant was at Long Island College Hospital, Postal Inspector Biegelman, in the company of other postal inspectors, broke open the defendant’s locked employee’s locker in the employees’ section of the main post office. In the defendant’s locker were three photographs of Michelle Greene, a letter addressed to her, a prescription container bearing her name, and her own Postal Service identification card.
This revealed to the investigators something that neither the defendant nor Michelle Greene had disclosed — that at *170 least two of the persons involved in the incident had known each other.
That property must be suppressed because the People have not met their burden of coming forward with evidence or authority to justify the search of the locker.
There was no search warrant, and the inspector had not sought the defendant’s permission to break open or search his locker.
There was no probable cause or reasonable suspicion on which to base a search of the locker. Inspector Biegelman based his decision to search the locker entirely on the defendant’s having stared at him when asked whether the person shot had been armed and upon the defendant’s not answering other questions while he was in the dazed condition.
When asked at the hearing what he expected to find in the locker, Biegelman answered: "I didn’t know.” He testified that he was not investigating whether a crime had occurred, and that "I considered myself investigating whether * * * there was a shooting and what kind of shooting it was by a postal employee.”
The supposed authority for this search was stated by Inspector Biegelman at the hearing: "Postal inspectors have the authority to open up the lockers of employees * * * It is in our regulations and requirements.” I disagree.
The defendant had a reasonable expectation of privacy in the locker, even though he was a public employee. In O’Connor v Ortega (480 US 709), the Supreme Court of the United States held that a doctor employed in a public hospital had a reasonable expectation of privacy in his desk and file cabinets; neither a search warrant nor probable cause was needed to search those places, but the search still had to be justified by "reasonableness.” As the court said in the plurality opinion: "Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer.” (Supra, at 717.) A search of a public employee’s possessions at the employee’s place of employment must be
" ' "reasonably related in scope to the circumstances which justified the interference in the first place” * * *’
"The search will be permissible in its scope when 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of...the nature of the [misconduct].’ ” (Supra, at 726.)
Similarly, United States v Blok (188 F2d 1019 [DC Cir]) held *171 that a search of a government worker’s desk is governed by the Fourth Amendment and requires some showing of connection between the employee’s job and the purpose of the search. Thus, a government employee’s superiors "could not reasonably search the desk for her purse, her personal letters, or anything else that did not belong to the government and had no connection with the work of the office.” (Supra, at 1021.)
The search of the defendant’s locker, based purely on an inspector’s hunch and his belief that according to "regulations” he could search lockers at will, was not justified under these principles. There was no apparent connection between the street shooting and the defendant’s locker, and the People have not shown any other facts to make the search "reasonable” according to Federal law.
Although it seems that the New York courts have not addressed the warrantless search of a government employee’s locker, the New York Court of Appeals has clarified the Fourth Amendment rights of public employees in another context. In Matter of Patchogue-Medford Congress of Teachers v Board of Educ. (70 NY2d 57, 68, 69), the court held that the Fourth Amendment and NY Constitution, article I, § 12 protect public employees against unreasonable searches; specifically, probationary teachers could not be required to undergo urinalysis to test for drugs — a form of "search” — without "reasonable suspicion”.
Matter of Caruso v Ward (72 NY2d 432) involved periodic random urinalysis drug-testing of members of the New York City Police Department’s Organized Crime Control Bureau. The Court of Appeals, in reliance on O’Connor v Ortega (supra), held that this search " 'should be judged by the standard of reasonableness under all the circumstances’ as to 'both the inception and the scope of the [government] intrusion.’ ” (Supra, at 437.) The court, quoting O’Connor v Ortega, noted that "a search by a public employer may be justified at its inception 'when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a non-investigatory work-related purpose’ ”. (72 NY2d, supra, at 437 [emphasis supplied]; see also, People v Overton, 20 NY2d 360, 361 [student’s locker in a public high school "is safeguarded from unreasonable searches for evidence of a crime”, and warrantless search requires valid consent].)
*172 I find on the present record, as a fact and as a mixed finding of fact and law, that the search of the defendant’s locker does not pass the New York test of "reasonableness.” Perhaps "reasonable suspicion” was not required, if the search of a locker be considered less invasive of privacy than urinalysis. It is not necessary to decide that issue here. But some connection was needed. For example, if Inspector Biegelman had concluded and testified that the defendant’s appearance and demeanor indicated that he might have been under the influence of drugs when he shot Robert Brown, that might have justified a search of the defendant’s locker.
Inspector Biegelman did not seek to connect the search of the locker to any articulable fact showing reasonableness under the Federal or State Constitutions; instead, he justified it by a regulation that he interpreted as across-the-board authority. The parties have agreed that the regulation is section 612.242 of the Employee Relations Manual of the United States Postal Service, which provides: "Employee lockers are subject to inspection by authorized personnel. Provisions governing locker inspections are provided in applicable collective bargaining agreements”.
The parties have stipulated that the search was neither supported nor undermined by any provision in any collective bargaining agreement. Therefore, on the present record, the reference in section 612.242 to "applicable collective bargaining agreements” is not pertinent to this case, and cannot be used to justify the search.
An administrative regulation cannot supercede the Fourth Amendment. Therefore, the requirement of "reasonableness” must be read into section 612.242, as the cases cited above establish. This regulation, interpreted in that light, does not justify the search of the defendant’s locker.
The broad authority envisioned by Inspector Biegelman is further contradicted by a defense exhibit at the hearing, a portion of the United States Postal Service Inspection Service Manual, which is used as a guide for postal inspectors’ professional conduct. Section 461.33 deals with warrantless searches of postal employees’ lockers. Section 461.33 is similar to section 612.242 of the Employee Relations Manual, but limits its broad language: "461.33 Warrantless Searches of Postal Employees Lockers. ASM 724.12 provides that all postal owned or furnished property is subject to examination and inspection by postal officials in the discharge of their official *173 duties. Thus in a criminal investigation an inspector may search an employee’s postal locker for evidence of fruits of a crime or contraband. Searches of this type have been upheld when limited to property furnished by the government. United States v. Collins, 349 F.2d 863 (2d Cir. 1965). cert. denied. 383 U.S. 960 (1966); United States v. Donato, 379 F.2d 288 (3d Cir. 1967); United States v. Bunkers, 521 F.2d 1217 (9th Cir. 1975), cert. denied, 423 U.S. 989 (1975). American Postal Workers Union v. United States Postal Service, C.A. No. C-2-83-0195 (S.D., Ohio, decided October 8, 1987). Such a search is invaluable if the situation demands immediate action” (emphasis supplied).
This section cites a regulation that has not been provided to the court by the parties, and that reference remains unexplained. I will assume for the sake of discussion that it is a reference to a provision similar to section 612.242 of the Employee Relations Manual. In any event, section 461.33 provides an administrative gloss on section 612.242, and in the portions italicized above amounts to a limitation on the latter provision — a limitation ignored by Inspector Biegelman.
Also in conflict with Biegelman’s broad interpretation of his power to search a locker are the cases cited in the inspectors’ manual. They either hold or imply that there must be a basis for a search of a locker, consisting of some connection between the employee’s work, the search, and the locker. The cases involve searches of postal or customs employees’ lockers for missing or stolen mail or, in Donato (supra), the search of a locker of an employee of the United States Mint for explosives after an explosion at the jobsite.
United States v Bunkers (supra) dealt with the search of a postal employee’s locker to find stolen mail. The court specifically noted that it was dealing only with the seizure of the fruits of a postal crime connected with the employee’s performance of her employment at the post office. Said the court: "We express no view or opinion upon the reasonableness of a search of a postal employee’s employment connected locker for the fruits of a crime not work connected.” (Supra, at 1220, n 1.)
United States v Collins (supra) involved the search of a customs employee’s work jacket. The court pointed out that it *174 was not concerned with an investigation of a crime unconnected with the performance of the defendant’s duties as a customs employee. Customs and postal agents were entitled to broad authority to search the publicly owned areas of government buildings to retrieve missing mail.
In the present case, by contrast, there was no connection between the defendant’s locker and any lost or stolen mail, fruits of the extortion of a postal employee, or similar fruits of a crime connected with the defendant’s employment, and no apparent connection (until after the search) with the shooting of Robert Brown.
Inspector Biegelman’s testimony, and the United States Postal Service Employee Relations Manual, also conflict with New York statutory law. CPL 2.20 (1) (c) provides that United States Postal Service police officers and inspectors have the "power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties” (emphasis supplied). The cases discussed in this opinion show that the inspectors’ power to carry out warrantless searches is restricted by the Fourth Amendment and the comparable provision in the New York Constitution (art I, § 12).[2]
The People have also contended that the regulation, section 612.242, establishes "consent” by the defendant to the search. The People have a "heavy burden” of establishing an "unequivocal” consent to a search. (People v Gonzalez, 39 NY2d 122, 128.) A People’s witness at the hearing with broader jurisdiction and familiarity with Postal Service rules than Inspector Biegelman, Postal Inspector Long, testified without contradition that employees are instructed that they are subject to the provisions of section 612.242, and that postal police officers would be included in that group. But the regulation is ambiguous. "Subject to search” can mean "always,” or it can mean "under appropriate circumstances.” This vague provision cannot be used as evidence of "unequivocal” blanket consent by all postal employees to otherwise baseless searches of their private lockers. Nor is there evidence that the defen *175 dont signed a consent or waiver form when he accepted his job with the Postal Service.
CONCLUSION
The property seized from the locker is suppressed.

. This lack of response will not be admissible during the People’s direct case at the trial, because the defendant had no obligation to answer the question. (See, People v Gluckowski, 174 AD2d 752.)

. The People have not argued that the Postal Service regulation, if read as a complete authority to search all lockers, is binding on this State court and has supremacy over the CPL under the Supremacy Clause of the US Constitution (art VI, cl 2). This court has therefore applied New York law of search and seizure to the admissibility of evidence in this New York State court. Moreover, even Federal law voids the search in this case.