689 A.2d 776

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN RAMA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 7, 1997—Decided March 4, 1997.

Dreier, P.J.A.D., dissented and filed opinion.

Before Judges DREIER, D'ANNUNZIO and NEWMAN.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Virginia C. Saunders*, Assistant Deputy Public Defender, of counsel and on the brief).

*Clifford J. Minor*, Essex County Prosecutor, attorney for respondent (*Joan Love*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether *N.J.S.A.* 2C:20–2.1a (section 2.1) mandates the suspension of defendant's driving privileges upon conviction of automobile theft, or whether the statute merely authorizes a court to impose that sanction in its sentencing discretion.

Pursuant to a plea agreement, defendant pleaded guilty to receiving stolen property, a 1994 Lexus automobile, in violation of *N.J.S.A.* 2C:20–7. The court sentenced defendant to three years of probation, suspension of his driver's license for one year, a $500 penalty, restitution, and other concomitant financial penalties. The court imposed the $500 penalty and license suspension because it believed that section 2.1 mandates the imposition of those sanctions. The court noted, however, that in the absence of section 2.1's mandate, it would not have imposed the license suspension. The court stayed the license suspension pending appeal. We conclude that the section 2.1 sanctions are mandatory.

Section 2.1 provides:

a. In addition to any other disposition authorized by law, a person convicted under the provisions of this chapter of theft or unlawful taking of a motor vehicle shall be subject:

(1) For the first offense, to a penalty of $500.00 and to the suspension or postponement of the person's license to operate a motor vehicle over the highways of this State for a period of one year.

(2) For a second offense, to a penalty of $750.00 and to the suspension or postponement of the person's license to operate a motor vehicle over the highways of this State for a period of two years.

(3) For a third or subsequent offense, to a penalty of $1,000.00 and to the suspension or postponement of the person's license to operate a motor vehicle over the highways of this State for 10 years.

Defendant contends that the section 2.1 sanctions are discretionary because the Legislature did not mandate their imposition, but merely made qualifying defendants "subject to" them in the trial court's sentencing discretion.

In construing a statute we must effectuate the Legislature's intent. *Monmouth County v. Wissell,* 68 *N.J.* 35, 43–44, 342 *A.*2d 199 (1975). Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness, and legislative history. *Coletti v. Union County Bd. of Chosen Freeholders,* 217 *N.J.Super.* 31, 35, 524 *A.*2d 1270 (App. Div.1987); *Shapiro v. Essex County Bd. of Chosen Freeholders,* 177 *N.J.Super.* 87, 92, 424 *A.*2d 1203 (Law Div.1980), *aff'd,* 183 *N.J.Super.* 24, 443 *A.*2d 219 (App.Div.), *aff'd,* 91 *N.J.* 430, 453 *A.*2d 158 (1982).

"[W]e must first look at the evident wording of the statute to ascertain its plain meaning and intent." *Renz v. Penn Cent. Corp.,* 87 *N.J.* 437, 440, 435 *A.*2d 540 (1981). Our duty is to apply the legislative intent as expressed in the statute's language, and we are not to presume that the Legislature intended something other than what it expressed by its plain language. *In re Jamesburg High Sch. Closing,* 83 *N.J.* 540, 548, 416 *A.*2d 896 (1980); *In re Howell Tp., Monmouth County,* 254 *N.J.Super.* 411, 419, 603 *A.*2d 959 (App.Div.), *certif. denied,* 127 *N.J.* 548, 606 *A.*2d 362 (1991).

In the present case, the language "shall be subject to" is ambiguous. *See Leslie Salt Co. v. United States,* 55 *F.*3d 1388, 1396–97 (9th Cir.) (describing phrase "shall be subject to" as "somewhat odd."), *cert. denied, Cargill, Inc. v. United States,* —— *U.S.* ——, 116 *S.Ct.* 407, 133 *L.Ed.*2d 325 (1995). Although "shall" is mandatory, "subject to" is less clearly so. *Compare Leslie Salt Co., supra,* (holding that clause "shall be subject to a civil penalty" mandated imposition of penalty), with *Spradling v. City of Tulsa,*

95 *F.*3d 1492, 1501 (10th Cir.1996) (ruling that phrase "subject to reduction" means "possibility.") (*cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 1081, 137 *L.Ed.*2d 216) and *People v. Postall,* 153 *Misc.*2d 167, 580 *N.Y.S.*2d 975, 980 (1992) (declaring that postal service regulation that "[e]mployee lockers are subject to inspection" did not constitute blanket consent to search because phrase "subject to" is ambiguous; it can mean "always" or "under appropriate circumstances."). When statutory language is ambiguous, courts must choose a construction which will carry out the legislative intent of the statute as a whole. *Accountemps Div. of Robert Half v. Birch Tree Group,* 115 *N.J.* 614, 622–23, 560 *A.*2d 663 (1989). Even though penal statutes should be strictly construed, the legislative intent controls in interpreting such statutes. *State v. Tischio,* 107 *N.J.* 504, 511, 527 *A.*2d 388 (1987).

■ Section 2.1 was one of a package of four bills passed by the Legislature and signed by Governor Florio in response to an epidemic of automobile thefts in New Jersey. All four of the bills were effective April 2, 1991.

*L.* 1991, *c.* 80, § 1 added *N.J.S.A.* 2C:20–16. It defined a new second degree crime, the maintenance or operation of "any premises, place or facility used for the remodeling, repainting, or separating of automobile parts for resale of any stolen automobile," colloquially known as a "chop shop," and, as an additional sanction, provided that a person convicted of this offense "shall forthwith forfeit his right to operate a motor vehicle in this State for a period to be fixed by the court at not less than three nor more than five years."

*L.* 1991, *c.* 81, added *N.J.S.A.* 2C:20–17, which makes it a second degree crime for an adult to knowingly use a person seventeen years of age or younger to commit theft of an automobile. The statute provided that an actor's mistaken belief that the juvenile was older than seventeen is no defense "even if such mistaken belief was reasonable." *N.J.S.A.* 2C:20–17b.

*L.* 1991, *c.* 82, added *N.J.S.A.* 2C:20–18 which makes it a second degree crime to be "a leader of a theft trafficking network." It authorized a fine not to exceed $250,000 "or five times the retail value of the automobiles seized at the time of the arrest, whichever is greater."

*L.* 1991, *c.* 83, § 1 is section 2.1. Section 2 of chapter 83, however, is *N.J.S.A.* 2C:20–2.2 (section 2.2). This section authorizes a fine greater than the maximum ordinary fine of $7,500 for a third-degree offense, if a stolen automobile is not recovered. In that event, it authorizes a fine equivalent to the fair market value of the unrecovered vehicle.

It is apparent that the four statutes manifest the Legislature's determination to increase the punishment available for persons involved in auto theft.

Section 3 of chapter 83 reinforces the inference that those statutes as a whole reflected the Legislature's determination to attack aggressively the problem of auto theft. Section 3 amended *N.J.S.A.* 2A:4A–26 by adding automobile theft to the list of serious offenses which qualified juveniles for treatment as an adult. *L.*1991, *c.* 83 § 3; *N.J.S.A.* 2A:4A–26a(2)(h).

We recognize that the operative language in section 2.1 lacks the clear mandate contained in chapter 80, section 1 which, as previously indicated, provides that a person convicted of maintaining a "chop shop" "shall forthwith forfeit his" driving license. Though the language difference between section 2.1 and chapter 80 are entitled to consideration regarding the Legislature's intent, we attribute less significance to those differences than the other indicia of legislative intent. Moreover, when the Legislature authorized a discretionary sanction, it used language which clearly expressed that intent. It did so in chapter 82 when it provided that "the court may impose a fine not to exceed $250,000 . . . ." on the leader of a theft trafficking network.

We also note that section 2.1b contains detailed provisions for the administration of license suspensions under the statute. The

first sentence removes the sentencing court's discretion regarding the commencement date of any license suspension. It provides:

> The suspension or postponement of the person's license to operate a motor vehicle pursuant to subsection a. of this section shall commence on the day the sentence is imposed.
>
> [*N.J.S.A.* 2C:20–2.1b.]

We are persuaded that the Legislature would not have granted only discretionary powers to suspend a license while removing from the sentencing court the discretion to determine the commencement date of the suspension period. Similarly, § 2.1 establishes the period of suspension, thereby removing even that degree of discretion from the sentencing court.

Finally, the criminal code, prior to the adoption of section 2.1, empowered a sentencing court, within its discretion, to forfeit a driving license for crimes "in the course of which a motor vehicle was used." *N.J.S.A.* 2C:43–2c. It provides:

> Instead of or in addition to any disposition made according to this section, the court may postpone, suspend, or revoke for a period not to exceed two years the driver's license, registration certificate, or both of any person convicted of a crime, disorderly persons offense, or petty disorderly persons offense in the course of which a motor vehicle was used. In imposing this disposition and in deciding the duration of the postponement, suspension or revocation, the court shall consider the severity of the crime or offense and the potential effect of the loss of driving privileges on the person's ability to be rehabilitated. Any postponement, suspension, or revocation shall be imposed consecutively with any custodial sentence.
>
> [*Ibid.*]

We conclude that automobile theft, including the crime of receiving a stolen automobile under *N.J.S.A.* 2C:20–7, qualifies as a crime to which *N.J.S.A.* 2C:43–2c applies. Therefore, if § 2.1 authorizes only discretionary license suspensions, it is redundant and unnecessary. We presume that the Legislature would not adopt such a statute. *See State v. Szemple,* 135 *N.J.* 406, 422, 640 *A.*2d 817 (1994) ("we are mindful that a construction that renders any part of a statute superfluous or meaningless is to be avoided") (citations omitted).

Affirmed.

DREIER, P.J.A.D. (Dissenting).

I must respectfully dissent from the conclusion drawn by my colleagues in this case.

Defendant has appealed from the sentence imposed after his guilty plea to receiving stolen property, a 1994 Lexus automobile, *N.J.S.A.* 2C:20–7. Defendant stated that when he drove the automobile to New York for a friend for the purpose of its sale, he initially had not known the car was stolen, but assumed that it was when he saw a broken window and found title documents indicating that the owner was other than the friend who had given the car to him. The judge sentenced defendant to a three-year probationary term conditioned upon fifty hours of community service as well as an additional penalty he determined was mandatory under *N.J.S.A.* 2C:20–2.1, namely, a one year's loss of driver's license and a $500 fine. The judge clearly stated that he would not have imposed the license suspension and fine had he not determined that these penalties were mandatory under *N.J.S.A.* 2C:20–2.1.

The issue of whether the additional statutory penalties were mandatory was specifically left open in *State in re V.M.*, 279 *N.J.Super.* 535, 538, 653 *A.*2d 612 (App.Div.1995). There, the court noted that the statutory language "may well be an authorization rather than a mandate to impose specific penalties." The statute provides:

 a. In addition to any other disposition authorized by law, a person convicted under the provisions of this chapter of theft or unlawful taking of a motor vehicle *shall be subject:*

 (1) *For the first offense, to* a penalty of $500.00 and to the suspension or postponement of the person's license to operate a motor vehicle over the highways of this State for a period of one year.

 [*N.J.S.A.* 2C:20–2.1 (Emphasis added).].

Additional penalties are also stated for a second, third or subsequent offense, and a detailed procedure is set forth in subsection b of the statute for the suspension of the offender's driver's license. In the case before us, defendant is a first offender and is em-

ployed as a United Parcel Service driver. The suspension of his license will mean the loss of employment.

The issue boils down to the interpretation of the words "shall be subject ... to." The use of the word "shall" implies that what follows is mandatory; the use of the words "subject to" indicates discretion on the part of the sentencing judge. The Legislature did not say "may be subject to;" nor did it state that the penalty "shall be imposed" or that defendant "shall be subjected to" the sentence. The Legislature obviously has given the courts the power to impose a harsher penalty for the theft of motor vehicles, but the issue is whether it intended to make this penalty mandatory, irrespective of the circumstances.

My colleagues have analyzed the four statutes approved on April 2, 1991 dealing with automobile thefts, *L.* 1991, *c.* 80–83,[1] now *N.J.S.A.* 2C:20–16, –17, –18 and –20.2.1. I glean from these statutes a different intention from that interpreted by the majority. When the Legislature intended to make the penalty mandatory, it expressed so in definite terms. In Chapter 80, *N.J.S.A.* 2C:20–16, when the Legislature mandated the forfeiture of a driver's license, it stated that a person who maintains a "chop shop," notwithstanding any other provision of the law to the contrary, "*shall forthwith forfeit* his right to operate a motor vehicle ... for a period to be fixed by the court at not less than three nor more than five years." *N.J.S.A.* 2C:20–16(b) (emphasis added). In the case before us, however, Chapter 83, *N.J.S.A.* 2C:20–2.1 provides that the convicted party "shall be subject ... to the suspension or postponement of the person's license ... for a period of one year." The difference in the language is striking.

The other two statutes enacted as part of this legislative package raise the degree of crime for an adult using a minor to commit an automobile theft to that of the second-degree. The penalty, however, is left to the discretion of the court under the sentencing provisions of the Code of Criminal Justice. The Legislature

---

[1] *C.* 83 was amended by *L.* 1993, *c.* 219 to add the "unlawful taking" language.

further provided that this crime should not merge with a conviction for theft of the automobile. The language, however, was not that the crime would be subject to not being merged, but rather that the crime "shall not merge with a conviction for theft of an automobile." The Legislature therefore again indicates that where it intends a penalty to be mandatory, it will say so.

On the other hand, in Chapter 82, *N.J.S.A.* 2C:20–18, establishing a new second-degree crime of being "a leader of an auto theft trafficking network," the Legislature did not impose a mandatory fine, but rather stated that "the court may impose a fine not to exceed $250,000.00 or five times the retail value of the automobile seized at the time of the arrest, whichever is greater." Again, the Legislature directed the nonmerger of the conviction using the "shall not merge" language it did in Chapter 81. However, the penalty for the offense is left to the discretion of the judge, within the guidelines of the Code of Criminal Justice. The Committee Statement attached to the bill notes that the original bill had provided a term of fifteen years imprisonment with a seven-year parole disqualifier. This mandatory sentence, however, was deleted.

Thus the Legislature imposed a mandatory license forfeiture for the operator of a "chop shop," no mandatory sentence for the use of a juvenile in the theft of an automobile, and no mandatory sentence for a leader of an auto theft trafficking network. But, according to the majority, the statute imposes a mandatory penalty and loss of driving privileges for theft of an automobile, even though the Legislature has employed equivocal language.[2]

---

[2] I also note some overlapping of the provisions of this Act with the sentencing provisions of *N.J.S.A.* 2C:43–2c. Although such duplication is not unusual in the law, the statute here under review establishes definite monetary penalties of between $500 and $1000, and specific terms of suspension of from one to ten years, depending upon the number of prior offenses, if the court determines to impose them. The general statute permits up to a two year suspension, without monetary penalties. The general statute was thus modified, not duplicated, with respect to the auto theft crimes.

Since this is a criminal statute, it must be narrowly construed. *State v. Valentin,* 105 *N.J.* 14, 17, 519 *A.2d* 322 (1987). If defendant "shall be subject" to the penalty, it could reasonably be interpreted as meaning that the sentencing court must consider whether this penalty should be imposed in addition to the fine, imprisonment or both already provided by law, but that the additional penalty is not mandatory. The defendant is merely exposed to such a penalty. If the word could reasonably be so interpreted and is part of a criminal statute, it should not be given a harsher construction.

I have no question that receiving stolen property is a "theft" which triggers the sentencing provisions of *N.J.S.A.* 2C:20–2.1, but I would read that statute as making defendant only subject (*i.e.,* exposed) to the penalties, not that the penalties must mandatorily be imposed. Given the sentencing judge's definite statements that he would not have imposed these penalties had he not considered them mandatory, I would remand this matter to him for resentencing.