IN THE SUPREME COURT OF WEST VIRGINIA

September 2014 Term

**FILED**

**November 7, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-1255

CAROL KING,
on behalf of herself and all others similarly situated,
Plaintiff Below, Petitioner

v.

WEST VIRGINIA'S CHOICE, INC.,
Defendant Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky, Judge
Civil Action No. 12-C-1796

AFFIRMED

Submitted: October 14, 2014
Filed: November 7, 2014

Cameron S. McKinney, Esq.
The Grubb Law Group
Charleston, West Virginia
Attorney for Petitioner

Patrick E. McFarland, Esq.
Patrick E. McFarland, P.L.L.C.
Parkersburg, West Virginia

David K. Hendrickson, Esq.
Barbara A. Samples, Esq.
Christopher S. Arnold, Esq.
Hendrickson & Long, PLLC
Charleston, West Virginia
Attorneys for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.  "A circuit court's entry of summary judgment is reviewed *de novo*."  Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2.  "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."  Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

LOUGHRY, Justice:

The petitioner (plaintiff below), Carol King ("Ms. King"), appeals from the October 31, 2013, final order of the Circuit Court of Kanawha County. Through this order, the circuit court granted summary judgment in favor of the respondent (defendant below), West Virginia's Choice, Inc. ("WV Choice"), and dismissed the action with prejudice. Ms. King asserts that the circuit court erred in its legal conclusion that she is not entitled to overtime compensation under the state's Minimum Wage and Maximum Hours Standards[1] ("MWMHS") because she is subject to the federal Fair Labor Standards Act ("FLSA").[2] Upon our consideration of the appendix record, the briefs and arguments of the parties, the applicable legal authority, and for the reasons discussed below, we affirm the circuit court's final order.

## I. Factual and Procedural Background

The material facts of this case are undisputed. WV Choice is a West Virginia corporation that provides in-home companionship services to persons who are unable to care for themselves due to either age or infirmity. These services are provided following a medical assessment by a physician and pursuant to a plan of care prepared by a trained nurse.

_____

[1]W.Va. Code §§ 21-5C-1 to -11 (2013, 2014, & Spec. Supp. 2014).

[2]29 U.S.C. §§ 201 - 219 (1998 & Supp. 2014).

1

At any given time, WV Choice has as many as 2000 employees, all of whom are referred to as in-home direct care workers. To the extent its employees perform incidental household work, which rarely occurs, such work does not exceed twenty percent of the work performed in any given week by any direct care worker, including Ms. King. The employees of WV Choice do not provide trained nursing services or any services that would be the equivalent of trained nursing services.

On January 14, 2011, Ms. King was hired by WV Choice as an in-home direct care worker to provide companionship services to the elderly or infirm. These services include meal preparation, bed-making, prompting clients to take medications, washing clothing, and assisting clients with personal care, such as dressing and personal grooming. WV Choice states that these services are typical of the in-home companionship care services provided by Ms. King and its other direct care worker employees.

On September 5, 2012, Ms. King filed a class action complaint against WV Choice in the circuit court seeking declaratory and injunctive relief, as well as damages for unpaid "overtime" compensation for herself and all other similarly situated employees.[3] Ms. King alleged that WV Choice violated the MWMHS by failing to pay her for hours worked

_____

[3]Also named as a defendant below was Mulberry Street Management Services, Inc. All claims against Mulberry were dismissed with prejudice, and it does not participate in this appeal.

2

in excess of forty hours per week at a rate of one and one-half times her regular rate, as provided in West Virginia Code § 21-5C-3 (2013).[4] Because the damages claim of Ms. King was entirely dependent upon whether WV Choice is an "employer," as defined by the MWMHS, the circuit court directed the parties to file briefs and dispositive motions on this issue.[5]

On or about August 14, 2013, WV Choice filed its motion for summary judgment, and the parties submitted their respective memoranda of law. On August 28, 2013, the circuit court held a hearing on the motion and, by order entered October 31, 2013, the circuit court granted summary judgment in favor of WV Choice.

In its summary judgment order, the circuit court found that MWMHS only applies to "employees" and "employers" as defined under the MWMHS in West Virginia Code § 21-5C-1 (2013). At the time this action was instituted, the statutory definition of "employer" included the proviso that "the term 'employer' shall not include any . . .

---

[4]West Virginia Code § 21-5C-3(a) provides, in part, that

> no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

[5]The circuit court deferred ruling on Ms. King's motion for class certification.

corporation . . . if eighty percent of the persons employed by him are subject to any federal

act relating to minimum wage, maximum hours and overtime compensation." W.Va. Code

§ 21-5C-1(e).[6]  Applying this statutory provision as written, the circuit court concluded that

the question of whether WV Choice meets the definition of "employer" under the MWMHS

is dependent upon whether eighty percent or more of its employees are "subject to" a federal

act, not whether they are "entitled to" overtime wages under a federal act.

In addressing the question posed, the circuit court found that the undisputed

evidence established that more than eighty percent of WV Choice's employees, including

Ms. King, are subject to the FLSA, a federal act which relates to minimum wage, maximum

---

[6]During 2014, the statutory definition of "employer" was amended during both the regular and second extraordinary sessions of the Legislature.  The statute in effect at the time this action was filed reads, as follows:

> "Employer" includes the State of West Virginia, its agencies, departments and all its political subdivisions, any individual, partnership, association, public or private corporation, or any person or group of persons acting directly or indirectly in the interest of any employer in relation to an employee; and who employs during any calendar week six or more employees as herein defined in any one separate, distinct and permanent location or business establishment: Provided, That the term "employer" shall not include any individual, partnership, association, corporation, person or group of persons or similar unit if eighty percent of the persons employed by him are *subject to* any federal act relating to minimum wage, maximum hours and overtime compensation.

W.Va. Code § 21-5C-1(e) (1999) (emphasis added).

4

hours, and overtime compensation. The circuit court further found the FLSA also applies to WV Choice as an enterprise engaged in commerce. Concluding that WV Choice does not meet the statutory definition of "employer" under the MWMHS and, therefore, the MWMHS did not apply, the circuit court dismissed, with prejudice, Ms. King's overtime compensation claim filed under the MWMHS. It is from this final order that Ms. King appeals.

## II. Standard of Review

Our review of the circuit court's summary judgment ruling is plenary. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Against this standard, we will consider the parties' arguments.

## III. Discussion
### A. "Employer" for purposes of the MWMHS

Through this appeal, we are called upon to apply the definition of "employer," as set forth in West Virginia Code § 21-5C-1(e),[7] to the undisputed facts of this case. The parties acknowledged during oral argument that our resolution of this matter hinges on what is meant by the undefined phrase "subject to" in the proviso found in West Virginia Code § 21-5C-1(e). This exclusionary proviso states that "the term 'employer' shall not include any

---

[7]*See supra* note 6.

5

. . . corporation . . . if eighty percent of the persons employed by him are subject to any federal act relating to minimum wage, maximum hours and overtime compensation." W.Va. Code § 21-5C-1(e). Ms. King contends that the words "subject to" mean "entitled to," whereas WV Choice asserts that this phase means "governed by or affected by."

As we have previously explained, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968); *see also* Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Recognizing that a court's duty is not to construe but to apply an unambiguous statute, we afford "[u]ndefined words and terms used in a legislative enactment . . . their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984). While Ms. King argues that "subject to" is synonymous with "entitled to," we find that these phrases have very different meanings and

6

import. The phrase "subject to" is defined as "under authority of"[8] and "governed or affected by."[9] Conversely, the phrase "entitled to" is defined as to "give (someone) a legal right or a just claim to receive . . . something"[10] and "to give a right . . . to."[11]

The Legislature has frequently employed the phrase "entitled to" when referring to someone or something having a right to a specific benefit. *See* W.Va. Code § 5-10-2(11) (2013 & Supp. 2014) ("is an employee . . . *entitled to* credited service"); W.Va. Code § 7A-2-1(c) (2012) ("Consolidated local governments . . . are *entitled to* all state and federal monetary assistance to the same extent a municipality or county is *entitled to* such assistance."); W.Va. Code § 9-4-2 (2012) ("Recipients . . . shall be *entitled to* have costs of necessary medical services paid out of the fund[.]"); W.Va. Code § 10-1A-4 (2012) (providing that interstate library district may "be *entitled to* receive any federal aid for which it may be eligible[]"); W.Va. Code § 15-1F-8 (2014) ("Members of the organized militia in the active service of the State shall be *entitled to* the same reemployment rights granted to members of the reserve components of the armed forces of the United States by applicable federal law."); W.Va. Code § 23-4B-2 (2010) ("For the relief of persons who are *entitled to*

---

[8]*See* New Oxford American Dictionary 1733 (3rd ed. 2010).

[9]*See* Black's Law Dictionary 1278 (5th ed. 1979).

[10]*See* New Oxford American Dictionary 579 (3rd ed. 2010).

[11]*See* Black's Law Dictionary 477 (5th ed. 1979).

receive benefits by virtue of Title IV of the federal Coal Mine Health and Safety Act of 1969"); W.Va. Code § 48-1-231(a) (2014) ("'Individual *entitled to* support enforcement services under the provisions of . . . Title IV-D of the federal Social Security Act'[.]").[12] We find it significant that the Legislature affirmatively chose to use the words "subject to" in the exclusionary proviso of West Virginia Code § 21-5C-1(e), rather than employing the phrase "entitled to," as it did in many other statutes.

In addition to requiring courts to apply a statute by giving words the meaning commonly attributed to them, we have further instructed that

> "'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Martin v. Randolph County Board of Education*, 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995), quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992).

*Appalachian Power Co. v. State Tax Dept.*, 195 W.Va. 573, 586, 466 S.E.2d 424, 437 (1995); *see also Stinson v. Com.*, 396 S.W.3d 900, 903 (Ky. 2013) (internal citations omitted) ("The plain meaning of the statutory language is presumed to be what the legislature intended."); *Haile v. State*, 66 A.3d 600, 611 (Md. 2013) (stating that in ascertaining actual intent of Legislature court will look to plain language under theory that "Legislature is presumed to

---

[12]We do not suggest any particular interpretation of these statutes. They are cited solely for the purpose of demonstrating the Legislature's repeated use of the phrase "entitled to" in its statutory enactments, and we have italicized those words for emphasis.

have meant what it said and said what it meant."); *State v. Rama*, 689 A.2d. 776, 777 (N.J. Super. Ct. App. Div. 1997) ("[W]e are not to presume that the Legislature intended something other than what it expressed by its plain language."); *Fox v. Fox*, 734 S.E.2d 662, 667 (Va. Ct. App. 2012) ("We look to the plain meaning of the statutory language, and presume that the legislature chose, with care, the words it used when it enacted the relevant statute.").

In applying the presumption that the Legislature said in West Virginia Code § 21-5C-1(e) what it meant and meant what it said, we conclude that the Legislature purposefully created a distinction between those employers with eighty percent or more of their employees being subject to the minimum wage and overtime provisions of the FLSA as opposed to those employers with less than eighty percent of their employees being subject to the FLSA.[13] *See Appalachian Power Co.*, 195 W.Va. at 585-86, 466 S.E.2d at 436-37.

---

[13]While not dispositive of the issues being decided, the record contains a West Virginia Division of Labor bulletin which states that "[s]ome industries are automatically covered under federal law and are therefore exempt from the West Virginia minimum wage provisions regardless of specific employee activity." "In-Home Health Care Providers" are among those industries listed in the bulletin. The record also contains a United States Department of Labor bulletin addressing which states do not "extend minimum wage and overtime provisions to *in-home care workers*." (emphasis added.). On this Department of Labor bulletin, West Virginia is depicted as a state that does not apply its minimum wage and overtime provisions to home health care workers. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173 (2007) (affording deference to federal dpartment of Labor's interpretation of its own regulations). We observe that these bulletins reflect that state and federal labor departments examine whether a category of workers is subject to the FLSA,
(continued...)

In short, this Legislative distinction cannot be altered by attributing a meaning to the phrase "subject to" that differs from its plain meaning.[14]  Accordingly, we conclude that the phrase "subject to" in the exclusionary proviso of West Virginia Code § 21-5C-1(e) means under the authority of, or governed or affected by, and not "entitled to."[15]

---

[13](...continued)
rather than whether a category of workers is definitionally excluded from state wage and hours laws.

[14]Ms. King relies upon *Adkins v. City of Huntington*, 191 W.Va. 317, 445 S.E.2d 500 (1994), and *Haney v. County Commission of Preston County*, 212 W.Va. 824, 575 S.E.2d 434 (2002), to argue that we have previously interpreted "subject to" in West Virginia Code § 21-5C-1(e) as meaning "entitled to."  However, in neither *Adkins* nor *Haney* were we asked to address the meaning of the phrase "subject to."  In *Adkins*, we were asked to determine whether a political subdivision of the state was an "employer" under the statutory definition of that term as set forth in West Virginia Code § 21-5C-1(e).  The phrase "subject to" was not an issue because the parties stipulated to the fact that eighty percent of the city's employees were subject to the FLSA.  *Adkins*, 191 W.Va. at 318, 445 S.E.2d at 501.  In *Haney*, we addressed a similar issue finding that the county commission was an "employer" under West Virginia Code § 21-5C-1(e).  We remanded the case for a determination as to whether at least eighty percent of all of the county commission's employees, including Sheriff's employees, were subject to the FLSA, which would take the county commission outside the state's MWMHS.  While we used the terms "subject to" and "covered by" in *Haney*, the meaning of the statutory phrase "subject to" was simply not an issue in *Haney*.

[15]Other states have created analogous statutory distinctions.  *See Parker v. Schilli Transp.*, 686 N.E.2d 845 (Ind. Ct. App. 1997) (finding employer did not fall under state minimum wage law where employer *subject to* FLSA) (emphasis supplied); *Hayes v. Rite Aid of Michigan, Inc.*, No. 248015, 2004 WL 1335865 (Mich. App. 2004) (affirming sanctions against plaintiff who refused to voluntarily dismiss state wage law overtime compensation claim where state law specifically provided that employers *subject to* FLSA did not fall under state wage law) (emphasis supplied); *Jones v. OS Restaurant Services, Inc.*, 245 P.3d 624 (Okla. Civ. App. 2010) (holding state minimum wage law excluded from its coverage employers *subject to* and complying with FLSA) (emphasis supplied).

10

## B. Whether eighty percent or more of WV Choice's employees are "subject to" the FLSA

We now turn to the issue of whether eighty percent or more of WV Choice's employees are subject to, that is governed or affected by, the FLSA. If so, then WV Choice does not fall within the definition of "employer" for purposes of the MWMHS.

As the circuit court found and as the record reflects, Ms. King admits that she is employed in "domestic service employment" to provide "companionship services" for individuals who, because of age or infirmity, are unable to care for themselves. The uncontested evidence further demonstrates that more than eighty percent of WV Choice's employees are direct care workers who are engaged in "domestic service" employment through the provision of in-home "companionship services" to the elderly and infirm.

"Domestic service" employment is clearly governed by the FLSA. As the United States Supreme Court explained,

> [i]n 1974, Congress amended the Fair Labor Standards Act of 1938 (FLSA or Act) . . . to include many "domestic service" employees not previously subject to its minimum wage and maximum hour requirements. See Fair Labor Standards Amendments of 1974 . . . (adding 29 U.S.C. § 206(f), which provides for a minimum wage for domestic service employees, and § 207(1), which extends overtime restrictions to domestic service employees). When doing so, Congress simultaneously created an exemption that *excluded* from FLSA coverage certain subsets of employees "employed in domestic service employment," including babysitters "employed on a casual

11

basis" and the companionship workers . . . . (codified at 29 U.S.C. § 213(a)(15)).[16]

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (footnote added). Other courts have insightfully commented that "Congress created the [companionship services] exception 'to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them.' *Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004) (internal citations omitted)." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300-01 (D. Md. 2007).

While "domestic service" employment falls within the penumbra of the FLSA, certain domestic service employees are exempt from the FLSA's minimum wage and overtime provisions. 29 U.S.C. § 213(a)(15). Before the exemption applies, however,

---

[16]29 U.S.C. § 213(a)(15) (1998) provides:

(a) Minimum wage and maximum hour requirements
The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to –

. . . .

(15) any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)[.]

12

specific criteria must be met in an employee's domestic service employment. For example,

the domestic service employment must be "performed by an employee in or about a private

home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R.

§ 552.3. Further, the companionship services may include household work such as meal

preparation, bed making, washing of clothes, and other similar services. *See* 29 C.F.R. §

552.6.[17] While general household work may be performed, such work may "not exceed 20

percent of the total weekly hours worked" for the § 213(a)(15) exemption to apply.[18] *Id.* In

addition, companionship services do not include services "relating to the care and protection

of the aged or infirm which require and are performed by trained personnel, such as a

_____

[17]29 C.F.R § 552.6 currently provides, in part:

> As used in section 13(a)(15) of the Act [29 U.S.C. § 213(a)(15)], the term *companionship services* shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided*, *however*, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse.

[18]As indicated previously, the record reflects that WV Choice employees rarely perform such general household work and, when they do, such work does not exceed twenty percent of the work performed in any given week by any direct care worker, including Ms. King.

registered or practical nurse." *Id.* Ms. King's employment in the provision of companionship services meets the criteria required to invoke the exemption.

Furthermore, through its regulations, the United States Department of Labor has extended the § 213(a)(15) exemption to persons, like Ms. King, who are employed by third-party employers, such as WV Choice, to provide companionship services. *See* 29 C.F.R. § 552.109(a) (providing that "[e]mployees who are engaged in providing companionship services, as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime pay requirements by virtue of [§ 2]13(a)(15)");[19] *see also Coke,*

---

[19]We observe that beginning January 1, 2015, employees engaged in domestic employment through the provision of companionship services will no longer be exempted from the FLSA's minimum wage and overtime provisions. *See* 29 C.F.R. § 552.109(a) (effective Jan. 1, 2015) ("Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section [2]13(a)(15) of the Act[.]"). As the Wage and Hour Division of the United States Department of Labor explains in its Fact Sheet: Application of the Fair Labor Standards Act to Domestic Service, Final Rule, regarding this rule change:

> Minimum Wage and Overtime Protections. This Final Rule . . . is prohibiting third party employers, such as home care agencies, from claiming the companionship . . . exemption[]. The major effect of this Final Rule is that more domestic service workers will be protected by the FLSA's minimum wage and overtime provisions.

at 172 (finding that "the Department [of Labor] intended the third-party regulation [29 C.F.R. § 109(a)] as a binding application of its rulemaking authority.").[20]

Ms. King asserts that her exemption from receiving overtime compensation under the FLSA means that WV Choice meets the definition of "employer" in the MWMHS. We disagree. Importantly, the applicability of a particular FLSA exemption does not mean that an employer or an employee is no longer subject to the FLSA. By way of illustration, in *Brown v. Ford Storage and Moving Co., Inc.*, 224 P.3d 593 (Kan. App. 2010), the court determined that the defendant employers did not meet the definition of "employer" for purposes of Kansas's minimum wage and maximum hours statutes because they were "subject to" the FLSA. *Id.* at 601. The Court of Appeals of Kansas reached this decision even though the plaintiff truck driver employees were exempt from the overtime compensation requirements of the FLSA.[21] As the Kansas court sagely instructed, "a party may be exempt from certain aspects of the FLSA without being categorically or

---

[20]In *Coke,* the Supreme Court addressed the conflict between 29 C.F.R. § 552.109(a), which extends the § 213(a)(15) exemption to those who are employed by a third party employer to provide companionship services, compared to 29 C.F.R. § 552.3, which applies the § 213(a)(15) exemption to domestic services performed by an employee in or about a private home of the person by whom he or she is employed. The Supreme Court concluded that 29 C.F.R. § 552.109(a) extends the § 213(a)(15) exemption to companionship workers employed by third-party employers.

[21]The Kansas statute excludes from its definition of "employer" for purposes of its minimum wage and maximum hours law "any employer who is subject to the provisions of the fair labor standards act[.]" K.S.A. 44-1202(d) (2000 & Supp. 2013).

jurisdictionally excluded from the statute."[22] *Id.*; *see also Lumry v. State of Kansas*, 307 P.3d 232 (Kan. Ct. App. 2014) (citing *Brown* with approval and finding employer exempt from Kansas maximum hours and minimum wage law even though employer immune from lawsuit for damages under FLSA); *Vanartsdalen v. Deffenbaugh Industries, Inc.*, No. 09-2030-EFM, 2011 WL 1002027, *45 (D. Kan. 2011) (finding employer subject to FLSA was not subject to state overtime law even though plaintiff's employment was exempt from FLSA overtime requirements). Despite being exempt from the overtime compensation provisions of the FLSA, WV Choice and its employees remain subject to other provisions of the FLSA, including statutes and regulations related to discrimination on the basis of sex; keeping and preserving employee records related to payroll, hours worked, and other practices and conditions of employment; and restrictions on the employment of minors and students. *See* 29 U.S.C. §§ 206(d)(1) (1998); 211(c) (1998); 212(c) (1998); and 214 (1998). Thus, we

---

[22]Ms. King argues that *Brown* and other cases relied upon by WV Choice are distinguishable from the case *sub judice* because the state wage and hours laws in those cases exclude, by definition, *employers* who are subject to the FLSA, rather than *employees* who are subject to the FLSA. Ms. King essentially contends that this Court must determine whether more than twenty percent of an employer's employees are exempt from the FLSA, rather than considering whether the employer is subject to the FLSA. This argument seems to be based on her underlying theory that "subject to" means "entitled to," which we have rejected. While we acknowledge the distinction that Ms. King endeavors to draw, we are nonetheless persuaded by the court's reasoning in *Brown* that "a party may be exempt from certain aspects of the FLSA without being categorically or jurisdictionally excluded from the statute." *Brown*, 224 P.3d at 601. Ms. King remains subject to the FLSA, although she is exempted from its overtime provisions.

conclude that the applicability of the § 213(a)(15) exemption does not equate with Ms. King not being subject to, or governed by, the FLSA.

### C. Whether the FLSA applies to WV Choice

In addition to challenging the circuit court's ruling that WV Choice's domestic service workers are under the authority of, or governed by, the FLSA, Ms. King also challenges the circuit court's ruling that the FLSA applies to WV Choice. For purposes of the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d) (1998). Although WV Choice clearly meets this statutory definition, Ms. King contends that the FLSA does not extend to WV Choice because it is engaged in purely intrastate commerce. Again, we disagree.

In 1961, the FLSA was amended to add what is referred to as "enterprise coverage." As one court has explained,

> [t]he concept of enterprise coverage was added by amendments in 1961 and expanded by amendments in 1966. Under the concept of enterprise coverage, a business that qualifies as a covered enterprise within the meaning of the statute is subject to the [FLSA's] requirements with respect to all its employees, including workers engaged in purely local activities. . . . [T]he [FLSA], as originally enacted, covered employees individually when their particular activities had something to do with interstate commerce. Amendments to the Act in 1961 and 1966 extended coverage to all employees working for a covered enterprise, whether or not the particular employee's activities had anything to do with interstate commerce.

17

*Shultz v. Poirier*, 300 F.Supp. 1156, 1158 (D.C. La. 1969).  Several years later, in 1974,

Congress amended its Congressional findings to expressly state that "the employment of

persons in domestic service in households *affects commerce*."  29 U.S.C. § 202(a) (1998)

(emphasis added).

Through both statutory and regulatory definition, an enterprise is engaged in

commerce if its employees handle or otherwise work on goods or materials that have moved

in commerce and it has an annual gross volume of sales or business in excess of $500,000,

exclusive of excise taxes.  *See* 29 U.S.C. § 203(s)(1)(A)(1998);[23] *see also* 29 C.F.R. §

779.238.[24]  The undisputed evidence in the record demonstrates that at any given time, WV

---

[23]29 U.S.C. 203(s) provides:

> (1) "Enterprise engaged in commerce or in the production of
> goods for commerce" means an enterprise that–

> (A)(i) has employees engaged in commerce or in the
> production of goods for commerce, or that has employees
> handling, selling, or otherwise working on goods or materials
> that have been moved in or produced for commerce by any
> person; and

> (ii) is an enterprise whose annual gross volume of sales
> made or business done is not less than $500,000 (exclusive of
> excise taxes at the retail level that are separately stated)[.]

[24]29 C.F.R. § 779.238 provides, in part, that

> [a]n enterprise . . . will be considered to have
> employees engaged in commerce or in the

(continued...)

18

Choice employs 2000 direct care workers who are "handling . . . goods or materials that have been moved in or produced for commerce[,]" and that its annual gross volume of sales made or business done is not less than $500,000, exclusive of excise taxes. *Id.*; *see also* 29 C.F.R. § 779.238; *Dias v. HBT, Inc.*, 2012 WL 294749 *4 (D.Md. Jan. 21, 2012) (recognizing employer fell within purview of FLSA where its employees handled goods or materials that had moved in interstate commerce). Further, Ms. King testified that she routinely handles and purchases food, household cleaning supplies, medications, and toiletries in the course of performing the companionship services that she provides. As Ms. King explained, she handles eggs and makes toast when cooking breakfast for a client; she shops at the Dollar General for her client; she handles linen and laundry detergent when doing laundry for her client; and she handles purchased toiletries when assisting a client with grooming. It is clear that in her provision of these services, Ms. King is handling goods that have moved or have been produced in interstate commerce. *See Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 695 (4th Cir. 1990) (finding that boards, which managed and funded home for sick or aged persons, were "enterprise" in interstate commerce under FLSA where employees of home "prepared and served food to the

---

[24](...continued)

> production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if . . . it regularly and recurrently has at least two or more employees engaged in such activities.

19

residents, washed the residents' laundry . . . all the time using goods and materials that had traveled in interstate commerce.").

Other undisputed evidence in the record reflects the existence of "enterprise coverage." Some of WV Choice's employees reside in states other than West Virginia. Further, some of its employees transport West Virginia residents to other states for the purpose of obtaining goods or services. WV Choice also uses the U.S. Mail to send paychecks to some of its out-of-state employees, and it uses direct deposit banking services to transfer funds from its West Virginia bank to out-of-state banks for payroll purposes. As one court has aptly observed, "[i]t is difficult to imagine a defendant employer in the twenty-first century that does not have employees who handle, sell, or otherwise work on goods or materials that have moved in or have been produced for commerce by any person." *Dias*, 2012 WL 294749, \*4. Accordingly, we conclude that WV Choice is an enterprise engaged in commerce as defined under the FLSA.

In consideration of all of the above, we conclude that WV Choice is a FLSA-regulated employer. We further conclude that because more than eighty percent of its employees are "subject to a federal act relating to minimum wage, maximum hours and overtime compensation[,]" WV Choice does not meet the definition of an "employer" under

20

the state's MWMHS for purposes of Ms. King's overtime compensation claim. *See* W.Va. Code § 21-5C-1(e).[25]

## IV. Conclusion

For all of the foregoing reasons, and based upon the specific facts and circumstances of this case, this Court is of the opinion that the circuit court acted properly in granting summary judgment to WV Choice. The Circuit Court of Kanawha County's final order entered on October 31, 2013, is affirmed.

Affirmed.

---

[25]Lastly, Ms. King cites the "savings clause" of the FLSA, 29 U.S.C. § 218(a) (1998), which allows states to enact wage laws more favorable than those under the FLSA. However, this savings clause does not apply under the facts of this case. Because WV Choice does not meet the definition of "employer" under the MWMHS, a comparison of the FLSA's wage laws with those provided under the MWMHS is unwarranted.